**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAM KOGON, DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, a Delaware limited liability company, <br><br> Defendant. | Case No. 26-cv-2582 <br><br> Honorable Sunil R. Harjani |

**MEMORANDUM OF LAW IN SUPPORT OF GOOGLE LLC'S
<u>MOTION TO DISMISS COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT.......................................................................................................................4

I.    Plaintiffs' Express License to YouTube Defeats Their Claims ...........................................4

II.    Plaintiffs Lack Standing to Bring Their DMCA and Copyright Claims ............................5

    A.    Plaintiffs Lack Standing to Bring DMCA Claims (Counts V, VI, VII) .................5

    B.    Plaintiff Michael Mell ("Mic Mell") and the Directrix Plaintiffs Lack Standing to Bring Copyright Claims.................................................................6

III.    Plaintiffs Fail to State a Claim for Their DMCA and Copyright Claims ...........................7

    A.    Plaintiffs Fail to State 17 U.S.C. § 1202(a) or (b) Claims (Counts V and VII)...............................................................................................................7

        1.    Plaintiffs Fail to Allege the Existence of CMI in Connection with Any Copyrighted Work, or Any Instance of False CMI.............................7

        2.    Plaintiffs' Section 1202 Claims Fail the Statute's Identicality Requirement.....................................................................................7

        3.    Plaintiffs Fail to Allege the Necessary Scienter for Section 1202 Claims .........................................................................................8

    B.    Plaintiffs Fail to State a Claim for Circumvention of Technological Access Controls Pursuant to 17 U.S.C. § 1201 (Count VI) ...............................10

    C.    Plaintiffs Fail to State a Claim for Contributory Infringement (Count VIII) ........11

    D.    Plaintiffs Fail to State a Claim for Vicarious Infringement (Count IX) ................12

IV.    Plaintiffs' Lanham Act and Related State Law Claims Fail.............................................13

    A.    Plaintiffs Fail to State a Claim for False Endorsement (Count X) ........................13

    B.    Plaintiffs Lack Standing and Fail to State a Claim for False Advertising Under the Lanham Act (Count XI) ........................................................16

    C.    Plaintiffs Fail to Allege Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count XVI) or the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count XIV) ........................17

V.    Plaintiffs' Other State Law Claims Fail to State a Claim ................................................18

    A.    Plaintiffs Fail to State a Claim for Violation of the Illinois Biometric Information Privacy Act (BIPA) (740 ILCS 14/1) (Count XII) ...........................18

        1.    Plaintiffs Fail to Allege Google Isolated or Extracted Voiceprints ...........19

        2.    Plaintiffs Fail to Allege the Challenged Data Could Identify Them ........21

i

        3.      Even if Plaintiffs Had Plausibly Alleged Extraction of Voiceprints, Their BIPA Allegations Still Fail to State a Claim ................................... 22

    B.      Plaintiffs Fail to State an Illinois Right of Publicity Act ("IRPA") Claim ............ 23

        1.      Plaintiffs' Section 30(a) Claim Fails .......................................................... 23

        2.      Plaintiffs' Section 30(b) IRPA Claim Fails as a Matter of Law ................ 26

    C.      Plaintiffs' Unjust Enrichment Claim Fails Because It Is Not an Independent Cause of Action Under Illinois Law ...................................................................... 28

VI.    The Copyright Act Preempts Nearly All the State Law Claims (Counts XII, XIII, XIV, and XVI) ............................................................................................................. 28

CONCLUSION .............................................................................................................................. 30

**TABLE OF CASES**

*188 LLC v. Trinity Indus., Inc.*,
 300 F.3d 730 (7th Cir. 2002) ..........................................................................................5

*AAVN, Inc. v. WestPoint Home, Inc.*,
 2019 WL 1168102 (N.D. Ill. Mar. 13, 2019).................................................................17

*Agfa Monotype Corp. v. Adobe Sys., Inc.*,
 404 F. Supp. 2d 1030 (N.D. Ill. 2005) .....................................................................10, 11

*Alan Ross Mach. Corp. v. Machinio Corp.*,
 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019)...............................................................6, 8

*Andersen v. Stability AI Ltd.*,
 700 F. Supp. 3d 853 (N.D. Cal. 2023) ............................................................................7

*Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*,
 805 F.2d 663 (7th Cir. 1986) ...................................................................................29, 30

*Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*,
 922 F.3d 827 (7th Cir. 2019) .........................................................................................17

*Bovinett v. HomeAdvisor, Inc.*,
 2018 WL 1234963 (N.D. Ill. Mar. 9, 2018)...................................................................18

*Brownmark Films, LLC v. Comedy Partners*,
 682 F.3d 687 (7th Cir. 2012) ...........................................................................................5

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
 2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ...................................................................5

*CardioNet, Inc. v. LifeWatch Corp.*,
 2008 WL 567031 (N.D. Ill. Feb. 27, 2008) ...................................................................18

*Carter v. Pallante*,
 256 F. Supp. 3d 791 (N.D. Ill. 2017) .......................................................................29, 30

*Castelaz v. Estee Lauder Cos., Inc.*,
 2024 WL 136872 (N.D. Ill. Jan. 10, 2024)....................................................................22

*Cengage Learning, Inc. v. Google LLC*,
 786 F. Supp. 3d 611 (S.D.N.Y. 2025).............................................................................13

*Clarke v. Aveda Corp.*,
 704 F. Supp. 3d 863 (N.D. Ill. 2023) .............................................................................21

*Concord Music Grp., Inc. v. X Corp.*,
 2024 WL 945325 (M.D. Tenn. Mar. 5, 2024) ................................................................13

*Couponcabin LLC v. Savings.com, Inc.*,
    2016 WL 3181826 (N.D. Ind. June 8, 2016) ....................................................................10

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
    607 U.S. ___, 2026 WL 815823 (Mar. 25, 2026) .............................................................11

*Crowley v. Jones*,
    608 F. Supp. 3d 78 (S.D.N.Y. 2022) .................................................................................8

*CustomGuide v. CareerBuilder, LLC*,
    813 F. Supp. 2d 990 (N.D. Ill. 2011) ...............................................................................30

*Cyber Websmith v. Am. Dental Ass'n*,
    2010 WL 3075726 (N.D. Ill. Aug. 4, 2010) .....................................................................30

*D'Ambrosio v. Meta Platforms Inc.*,
    2026 WL 1361951 (7th Cir. May 15, 2026) .....................................................................25

*D'Ambrosio v. Rajala*,
    783 F. Supp. 3d 1077 (N.D. Ill. 2025) (Harjani, J.) .........................................................25

*Daichendt v. CVS Pharmacy, Inc.*,
    2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ....................................................................22

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) .....................................................................................24, 26

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .............................................................................................................15

*Davis v. e.l.f. Cosms., Inc.*,
    2024 WL 2722663 (N.D. Ill. May 28, 2024) ....................................................................22

*Defined Space, Inc. v. Lakeshore E., LLC*,
    797 F. Supp. 2d 896 (N.D. Ill. 2011) ...............................................................................30

*deGrasse v. Hyundai Motor Am.*,
    2025 WL 1413177 (N.D. Ill. May 15, 2025) ....................................................................22

*Design Basics, LLC v. WK Olson Architects, Inc.*,
    2019 WL 527535 (N.D. Ill. Feb. 11, 2019) .....................................................................7, 8

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ...............................................................................................6

*Dobrowolski v. Intelius, Inc.*,
    2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ...............................................................24, 26

iv

*Doe 1 v. GitHub, Inc.*,
　2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ...............................................................6, 7

*Doe v. TCF Bank Ill., FSB*,
　707 N.E.2d 220 (Ill. App. Ct. 1999) ............................................................................27

*Ellison v. Robertson*,
　357 F.3d 1072 (9th Cir. 2004) .....................................................................................13

*Enhanced Athlete Inc. v. Google LLC*,
　479 F. Supp. 3d 824 (N.D. Cal. 2020) ..........................................................................5

*Flava Works, Inc. v. Clavio*,
　2012 WL 2459146 (N.D. Ill. June 27, 2012) ...........................................................12, 13

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
　763 F.3d 696 (7th Cir. 2014) ......................................................................................14

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
　586 U.S. 296 (2019)......................................................................................................6

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
　700 F. App'x 674 (9th Cir. 2017) .................................................................................8

*G.T. v. Samsung Elecs. Am. Inc.*,
　742 F. Supp. 3d 788 (N.D. Ill. 2024) ..........................................................................21

*Gensler v. Strabala*,
　764 F.3d 735 (7th Cir. 2014) ......................................................................................17

*Harbour v. Parker Hannifin Corp.*,
　2024 WL 4132283 (N.D. Ind. Sept. 10, 2024) ...........................................................17

*Hart v. Amazon*,
　2015 WL 8489973 (N.D. Ill. Dec. 8, 2015).................................................................11

*Hart v. Amazon.com, Inc.*,
　191 F. Supp. 3d 809 (N.D. Ill. 2016), *aff'd,* 845 F.3d 802 (7th Cir. 2017) .......................15, 18

*Heard v. Becton, Dickinson & Co.*,
　440 F. Supp. 3d 960 (N.D. Ill. 2020) ..........................................................................23

*Hooks v. CloudSpotter Techs. Inc.*,
　2026 WL 1045734 (N.D. Ill. Apr. 17, 2026) ..............................................................21

*Horn v. Method Prods., PBC*,
　2022 WL 1090887 (N.D. Ill. Apr. 12, 2022) ..............................................................23

*Huston v. Hearst Communications, Inc.*,
  53 F.4th 1097 (7th Cir. 2022) ...................................................................................................24

*In re Jackson*,
  972 F.3d 25 (2d Cir. 2020)........................................................................................................29

*Johnson v. Northshore Univ. HealthSystem*,
  2011 WL 10069086 (Ill. App. Ct. Mar. 31, 2011)...................................................................28

*Jones v. Microsoft Corp.*,
  649 F. Supp. 3d 679 (N.D. Ill. 2023) .......................................................................................22

*Lan-Oak Park Dist. v. Lansing J., LLC*,
  2025 WL 947890 (N.D. Ill. Mar. 28, 2025)........................................................................14, 18

*Laws v. Sony Music Ent., Inc.*,
  448 F.3d 1134 (9th Cir. 2006) .............................................................................................29, 30

*Lehrman v. Lovo, Inc.*,
  790 F. Supp. 3d 348 (S.D.N.Y. 2025)..................................................................................12, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)...................................................................................................................16

*Logan v. Meta Platforms, Inc.*,
  636 F. Supp. 3d 1052 (N.D. Cal. 2022) ......................................................................................9

*Love v. Simmons*,
  2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ........................................................................25, 26

*Mango v. BuzzFeed, Inc.*,
  970 F.3d 167 (2d Cir. 2020)........................................................................................................8

*Marchman v. Kovel-Fuller, LLC*,
  2007 WL 9811116 (N.D. Ill. July 9, 2007)...............................................................................26

*Martell v. X Corp.*,
  2024 WL 3011353 (N.D. Ill. June 13, 2024) (Harjani, J.)...................................................20, 21

*Martin v. Living Essentials, LLC*,
  160 F. Supp. 3d 1042 (N.D. Ill. 2016), *aff'd,* 653 F. App'x 482 (7th Cir. 2016) ....................17

*Martin v. Living Essentials, LLC*,
  653 F. App'x 482 (7th Cir. 2016) ..............................................................................................15

*Martin v. Wendy's Int'l, Inc.*,
  2017 WL 1545684 (N.D. Ill. Apr. 28, 2017), *aff'd*, 714 F. App'x 590 (7th Cir.
  2018) ..........................................................................................................................................14

vi

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
    20 F.4th 311 (7th Cir. 2021) ..................................................................................................28

*Meyers v. Nicolet Rest. of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ..................................................................................................5

*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988) ..................................................................................................26

*MJ & Partners Rest. Ltd. P'ship v. Zadikoff*,
    10 F. Supp. 2d 922 (N.D. Ill. 1998) ......................................................................................17

*Muhammad v. Home Box Off., Inc.*,
    2021 WL 3354829 (C.D. Ill. Aug. 2, 2021)..........................................................................6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ..................................................................................................13

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
    2012 WL 414803 (N.D. Ill. Feb. 8, 2012) .............................................................................30

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
    975 F. Supp. 2d 920 (N.D. Ill. 2013) ....................................................................................7

*Pesina v. Midway Mfg. Co.*,
    948 F. Supp. 40 (N.D. Ill. 1996) ...........................................................................................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ..................................................................................................28

*Plum Markets, LLC v. Compass Grp. USA, Inc.*,
    2021 WL 323791 (N.D. Ill. Feb. 1, 2021) .............................................................................15

*Raw Story Media, Inc. v. OpenAI, Inc.*,
    756 F. Supp. 3d 1 (S.D.N.Y. 2024) .......................................................................................6

*Richardson v. Kharbouch*,
    156 F.4th 849 (7th Cir. 2025) ................................................................................................12

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017).................................................................................21

*Rodriguez v. ByteDance, Inc.*,
    2025 WL 672951 (N.D. Ill. Mar. 3, 2025)...........................................................................23

*United States ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023)................................................................................................................27

vii

*Segerdahl Corp. v. Am. Litho, Inc.*,
2019 WL 157924 (N.D. Ill. Jan. 10, 2019) ................................................................. 17

*Seng-Tiong Ho v. Taflove*,
648 F.3d 489 (7th Cir. 2011) ........................................................................................ 28

*Shah v. NYP Holdings, Inc.*,
2023 WL 266511 (N.D. Ill. Jan. 18, 2023), *aff'd*, 2024 WL 3825220 (7th Cir.
Aug. 15, 2024) ................................................................................................................. 8

*Sharpsmart, Inc. v. Becton, Dickinson & Co.*,
2018 WL 11470992 (N.D. Ill. May 20, 2018) ........................................................... 18

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024), *rev'd on other grounds*, 607 U.S. ___ (2026) .......... 13

*Souza v. Exotic Island Enters., Inc.*,
68 F.4th 99 (2d Cir. 2023) ........................................................................................... 15

*Springfield v. Allphin*,
384 N.E.2d 310 (Ill. 1978) ............................................................................................ 19

*Staygart v. Yahoo! Inc.*,
651 F. Supp. 2d 873 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) .......... 14

*Stevens v. CoreLogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) .................................................................................. 9, 10

*Sun v. Xie*,
2025 WL 2467497 (N.D. Ill. Aug. 27, 2025) .............................................................. 8

*Thompson v. Getty Images (US), Inc.*,
2013 WL 3321612 (N.D. Ill. July 1, 2013) ............................................................... 25

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241 (7th Cir. 2021) ..................................................................................... 22

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ......................................................................................... 5

*Time Savers, Inc. v. LaSalle Bank, N.A.*,
863 N.E.2d 1156 (Ill. App. Ct. 2007) ......................................................................... 27

*Toney v. L'Oreal USA, Inc.*,
406 F.3d 905 (7th Cir. 2011) ....................................................................................... 28

*Toulon v. Cont'l Cas. Co.*,
877 F.3d 725 (7th Cir. 2017) ....................................................................................... 28

*Tremblay v. OpenAI, Inc.*,
　716 F. Supp. 3d 772 (N.D. Cal. 2024) ........................................................9, 11, 12

*Turner v. Nuance Commc'ns, Inc.*,
　735 F. Supp. 3d 1169 (N.D. Cal. 2024) ................................................................19

*United States v. Williams*,
　583 F.2d 1194 (2d Cir. 1978)................................................................................19

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
　43 F.4th 1313 (11th Cir. 2022) .............................................................................10

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*,
　2017 WL 6569633 (N.D. Ill. Dec. 21, 2017).......................................................17

*Wal-Mart Stores, Inc. v. Samara Bros.*,
　529 U.S. 205 (2000)..............................................................................................15

*Walsh v. Rokoko Elecs., Inc.*,
　2025 WL 3707044 (C.D. Cal. Dec. 22, 2025) .......................................................6

*X Corp. v. Bright Data Ltd.*,
　733 F. Supp. 3d 832 (N.D. Cal. 2024) ..................................................................29

*Zellmer v. Meta Platforms, Inc.*,
　104 F.4th 1117 (9th Cir. 2024) .............................................................................21

**INTRODUCTION**

Plaintiffs are musicians who chose to leverage Google's groundbreaking YouTube platform to promote and monetize their music. They ask the Court to impose sweeping liability on Google for building another transformative tool—Lyria, a music-generation platform that democratizes access to the recording studio for millions of others. Their lawsuit is based on the unsupported hypothesis that Google trained on their specific works. Even accepting their untested allegations as fact, the Complaint cannot stand. Plaintiffs each granted YouTube, and Google— which provides the service—a broad license to use the uploaded content. That license, present in YouTube's Terms of Service, authorized the conduct alleged in the Complaint.

Beyond that, the Complaint's scattershot theories independently fail. Plaintiffs' DMCA claims collapse on standing grounds: despite alleging that Lyria was trained on their recordings, Plaintiffs identify no infringing output, no copyright management information ("CMI") that was altered or removed, and no concrete harm flowing from the purported violation. Their contributory and vicarious copyright claims suffer the same defect, and the contributory claim also fails under *Cox Communications*, which requires plaintiffs to plead the defendant affirmatively induced the infringement at issue. Their Lanham Act false endorsement claim fails because Plaintiffs do not— and cannot plausibly—allege that their voices are sufficiently distinctive or well-known to function as trademarks in the marketplace, or that any consumer has ever encountered a Lyria output and mistaken it for their work. Their BIPA claim rests on the hypothesis that Google must have extracted individualized voiceprints—a theory the Complaint directly undermines by alleging that artist-identifying metadata was stripped in the first step of Lyria's training pipeline, and that the publicly available open-source model sharing Lyria's architecture contains no trace of voiceprints. Speculation and "information and belief" allegations untethered to observable facts cannot survive a motion to dismiss. The Court should dismiss the Complaint with prejudice.

1

## BACKGROUND

***YouTube Is a Global Platform That Musicians, Including Plaintiffs, Use to Reach the World.*** Google has invested immense resources building YouTube into one of the principal platforms through which musicians choose to distribute and monetize their work globally. In the twelve months ending June 2025, "YouTube paid more than $8 billion to the music industry," Compl. ¶ 65, and a total of $100 billion to creators, artists, and media companies in the four years prior to January 2025.[1] For working musicians, YouTube has become "a major avenue for fan discovery, audience growth, and revenue," and "a long-term home for artists and songwriters and a reliable channel for monetization." Compl. ¶¶ 66–67. Plaintiffs, like myriad musicians, have chosen to benefit from the platform Google built.

***Plaintiffs Agreed to the YouTube Terms of Service.*** Plaintiffs each chose to make their songs "commercially available on YouTube." Compl. ¶ 63; *see also id.* ¶¶ 27, 32, 39, 48, 55, 123. In choosing to distribute their songs on YouTube, Plaintiffs agreed to the Terms of Service ("TOS") for the service, which Plaintiffs acknowledge "Google owns and operates" and is "the entity providing the YouTube service." *Id.* ¶ 64; *see id.* ¶¶ 22, 70–71, 237; TOS, Schapiro Decl. Exs. A–E. Each Plaintiff granted YouTube and its "Affiliates" a "worldwide, non-exclusive, royalty-free, sublicensable and transferable license" to "use [uploaded] content," including to "reproduce, distribute, [and] prepare derivative works." TOS, "License to YouTube."[2] The TOS

---

[1] Google, YouTube Copyright Transparency Report (2026), available at https://transparencyreport.google.com/youtube-copyright/intro?hl=en.

[2] For simplicity, this Motion quotes language from the 2019 version of the TOS. Even the Plaintiffs who agreed to the 2008 and 2012 versions initially agreed to the same, broad license grant with slight variation in phrasing. *E.g.*, Ex. A (2008 TOS) (granting "a worldwide, non-exclusive, royalty-free, sublicenseable and transferable license to use … the User Submissions in connection with … YouTube's (and its … affiliates') business …."); Ex. B (2012 TOS) (granting "a worldwide, non-exclusive, royalty-free, sublicenseable and transferable license to use … the Content in connection with … YouTube's (and its … affiliates') business …."). Further, Plaintiffs agreed to be "bound by … modifications or revisions" to the TOS, *id.*, including the terms of the 2019 or current TOS referenced in the Complaint. Compl. ¶ 64 & n.28.

2

expressly confirms "Affiliates" are the other companies within Alphabet Inc., including Google. TOS, "Your Service Provider." Plaintiffs uploaded the underlying audio files directly with no other restrictions placed on YouTube's access. Compl. ¶¶ 27–55, 61–63.

*Google's Lyria Models Democratize Access to the Creative Process.* The process of creating music has, "historically, require[d] a songwriter, a vocalist, a producer, and a recording studio." Compl. ¶ 107. Google has long invested to remove these barriers and empower personal expression. In November 2023, Google introduced Lyria as the company's flagship music-generation model. *Id.* ¶ 92. Before doing so, Google adopted "AI music principles" and launched the Music AI Incubator to "gather feedback from artists, songwriters, producers, and rights holders on AI music tools." *Id.* ¶ 97. Lyria 2 followed, *id.* ¶ 2, and on February 18, 2026, Google "launched Lyria 3 inside the Gemini app." *Id.* ¶ 105. Google next introduced ProducerAI, "a standalone web-based platform for creating, sharing, and publishing AI-generated music." *Id.* ¶ 113.

*Training Google's Music-Generation Models.* According to the Complaint, Google develops its music-generation models using a "consistent," three-step process. Compl. ¶ 75. First, Plaintiffs allege Google separates a recording into compact pieces of code, called "tokens," which Plaintiffs describe as "compact representations that can be decoded back into audio waveforms." *Id.* Second, Plaintiffs allege that Google feeds the tokens into a model to train it to "predict and produce token sequences in the same manner that large language models generate text." *Id.* Third, Plaintiffs allege Google trains the model to associate particular token combinations with generic written descriptions. *Id.*; *see also* Schapiro Decl. Ex. G at 10–11, 28–29 (examples include a "folk song featur[ing] a male voice singing the main melody in an emotional mood"). This step gives a model the capacity to understand a user's prompt when a particular genre, instrument, or other characteristic is requested.

***Plaintiffs Hypothesize that Lyria Was Trained on Their Works.*** The Complaint alleges that Google used Plaintiffs' recordings to train Lyria 3. Compl. ¶ 11. The only basis for this allegation is that their works were available on YouTube during the period Google developed Lyria. Although they allege, on "information and belief," that Lyria generates outputs "that incorporate, recast, or are substantially similar" to their copyrighted works and voices, the Complaint neither identifies nor describes any instance in which that occurred. *Id.* ¶¶ 200, 264.

***Plaintiffs Hypothesize that Google Must Have Created Biometric "Voiceprints."*** Plaintiffs allege that somewhere in the process of developing Lyria Google must have created individualized mechanical representations of each Plaintiff's voice (a "voiceprint"). Compl. ¶ 249. But the Complaint identifies no step in the development or training of Google's models in which Plaintiffs' voices were extracted, isolated, or catalogued.

***Plaintiffs' Copyright Management Information Allegations.*** Plaintiffs also allege that their recordings possessed CMI—*e.g.*, name of the work, artist, publisher—before Google obtained them. *Id.* ¶ 184. The Complaint does not identify what CMI was embedded in which work, how that CMI got there, or the form it took in the recording. Plaintiffs hypothesize Lyria 3 distributes false CMI when it identifies a Lyria user (instead of Plaintiffs) as the generated song's creator, *see id.* ¶¶ 199–200, but assert no instance of this occurring.

***Plaintiffs Allege Lyria Users Are Misled.*** Although Plaintiffs are lesser-known musicians and songwriters, they allege that Lyria's outputs confuse users if they sound similar to Plaintiffs' works or voices. *See, e.g.*, *id.* ¶¶ 6, 13, 228–229. Plaintiffs do not allege a single instance of confusion, nor do they provide an example of an output that could be confusing.

## ARGUMENT

### I. PLAINTIFFS' EXPRESS LICENSE TO YOUTUBE DEFEATS THEIR CLAIMS

Plaintiffs' claims fail as a matter of law because the TOS, which each Plaintiff accepted

4

when promoting their music on the platform, grants Google a broad license to use Plaintiffs' uploaded content in connection with Google's business. *Supra* at 2–3.[3] It is axiomatic that the Court can consider the express license on a motion to dismiss. The Complaint repeatedly refers to the TOS and incorporates it by reference. *See, e.g.*, Compl. ¶¶ 64, 70–71, 104. "The [incorporation-by-reference] doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)); *see also 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (incorporation-by-reference "prevent[s] parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.").

Courts routinely consider the TOS and its broad license to dismiss similar claims. *See, e.g.*, *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *3–6 (S.D.N.Y. Mar. 21, 2022) (dismissing copyright claims based on the same license-grant language in YouTube's TOS, and reaffirming the "hallmark principle" that licensors may not sue their licensees for copyright infringement); *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824 (N.D. Cal. 2020) (dismissing claim based on YouTube's TOS). This Court should do so here.

## II.     PLAINTIFFS LACK STANDING TO BRING THEIR DMCA AND COPYRIGHT CLAIMS

### A.     Plaintiffs Lack Standing to Bring DMCA Claims (Counts V, VI, VII)

A plaintiff must satisfy Article III's injury-in-fact requirement to maintain a claim under the Digital Millennium Copyright Act ("DMCA"). *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 728–29 (7th Cir. 2016) (affirming dismissal where statutory violation did not cause

---

[3] The BIPA claim (Count XII) falls outside the scope of the license because BIPA requires separate and specific "written release" to "collect, capture, purchase, receive through trade, or otherwise obtain a person's … biometric information." 740 ILCS 14/15(b)(3). However, Plaintiffs' license to YouTube preempts BIPA claims arising from Google's use of their works. *See infra* § VI.

concrete injury); *Dinerstein v. Google, LLC*, 73 F.4th 502, 511–12 (7th Cir. 2023) (injury must be real and not abstract or speculative). And Plaintiffs must adequately "allege an injury associated with [the DMCA] violation." *Alan Ross Mach. Corp. v. Machinio Corp.*, 2019 WL 1317664, at *3 (N.D. Ill. Mar. 22, 2019) (dismissing DMCA claim where no alleged harm, "such as reduced sales or advertisements"); *see* 17 U.S.C. § 1203(a); *Walsh v. Rokoko Elecs., Inc.*, 2025 WL 3707044, at *6 (C.D. Cal. Dec. 22, 2025) (same standing requirement for 17 U.S.C. §§ 1201, 1202).

Plaintiffs meet neither requirement. The Complaint lacks any allegation that Lyria 3 ever produced an infringing output—there is no alleged injury-in-fact. Nor does it describe any concrete injury—such as lost sales or licensing revenue—arising from the purported DMCA violations. *See supra* at 4; Compl. ¶¶ 182–203. Accordingly, Plaintiffs cannot establish constitutional or statutory standing. *See Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6 (S.D.N.Y. 2024) (Section 1202 claims dismissed for failure to show injury); *see also Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *5 (N.D. Cal. Jan. 22, 2024) (similar).

### B. Plaintiff Michael Mell ("Mic Mell") and the Directrix Plaintiffs Lack Standing to Bring Copyright Claims

Plaintiffs repeatedly acknowledge that registration is a prerequisite to pursuing a copyright infringement claim. *See* 17 U.S.C. § 411(a); Compl. ¶¶ 153, 167, 175, 206, 215. "[A] copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright," and not upon the filing of an application alone. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301, 303 (2019); *Muhammad v. Home Box Off., Inc.*, 2021 WL 3354829, at *2 (C.D. Ill. Aug. 2, 2021) (dismissed claim for insufficient registration allegation).

Despite this blackletter law, Michael Mell and the Directrix Plaintiffs improperly pursue copyright claims against Google for unregistered works. Their copyright registration information appears only with a placeholder, cryptically noting that Mell and Directrix "have filed or will

6

promptly file copyright registration applications." *See* Compl. ¶¶ 36, 49; Plaintiffs' Ex. A at 6–8 (Directrix), 9–11 (Mell). Because no registration certificates existed for those works at the time the Complaint was filed, *Fourth Estate* bars Mell's and the Directrix Plaintiffs' copyright claims.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR THEIR DMCA AND COPYRIGHT CLAIMS

#### A. Plaintiffs Fail to State 17 U.S.C. § 1202(a) or (b) Claims (Counts V and VII)

##### 1. Plaintiffs Fail to Allege the Existence of CMI in Connection with Any Copyrighted Work, or Any Instance of False CMI

A prerequisite for both Plaintiffs' Section 1202(a) claim—prohibiting knowingly distributing false CMI—and Section 1202(b) claim—prohibiting the removal or alteration of CMI—is an allegation that a copyrighted work was conveyed with CMI. *See Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928–30 (N.D. Ill. 2013) (dismissing Section 1202(a) and (b) claims for failure to allege that CMI was conveyed with the copyrighted work). Plaintiffs' conclusory allegations that their works "contained CMI at or before Google's acquisition" and that "[s]ound recordings are distributed with embedded metadata including artist name, track title, [etc.]" (Compl. ¶ 184), are insufficient. Courts routinely dismiss Section 1202 claims based on similarly generic, barebones allegations that fail to plead "the exact type of CMI" included in their works and "when" the stripping of CMI occurred. *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 871–72 (N.D. Cal. 2023).

##### 2. Plaintiffs' Section 1202 Claims Fail the Statute's Identicality Requirement

"[N]o DMCA violation exists where the works are not identical." *See Doe 1*, 2024 WL 235217, at *9 (internal quotation marks omitted). Even where a defendant "copie[s] aspects" of another work and creates something "virtually identical," a Section 1202 claim fails where the purportedly derivative work is created separately. *See Design Basics, LLC v. WK Olson Architects, Inc.*, 2019 WL 527535, at *5 (N.D. Ill. Feb. 11, 2019). Plaintiffs allege that Google's training

pipeline "segment[ed] [audio] into clips" and "transform[ed] it into tokenized representations for model training." Compl. ¶ 134. By Plaintiffs' own account, then, the copies allegedly created for model training are model-ready tokenized representations of short audio clips, not identical copies. *Id.* ¶ 154; *see Frost-Tsuji Architects v. Highway Inn, Inc.*, 700 F. App'x 674, 675 (9th Cir. 2017) (affirming summary judgment where no identicality).

Nor can Plaintiffs allege a DMCA violation based on Lyria 3's outputs. They allege that Lyria 3 "generates" tracks independently, not that it re-distributes their exact audio files without CMI. Compl. ¶ 105. Because "[b]asing a [recording] on another's work is not the same as removing [CMI]," the DMCA claims fail. *Design Basics*, 2019 WL 527535, at *5 (quotation marks omitted).

Similarly, Section 1202(a) does not reach works that are distributed with the purported infringer's own CMI. *See Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) (no DMCA violation where alleged infringer printed his own name on derivative work); *Alan Ross*, 2019 WL 1317664, at *2–3 (no claim where defendant's own name was listed alongside work). Plaintiffs allege that Google's system inserts the CMI of the user who requested the allegedly infringing output—not that Google falsified third-party CMI, Compl. ¶ 199, which defeats the claim.

3.      Plaintiffs Fail to Allege the Necessary Scienter for Section 1202 Claims

Section 1202 imposes a "double scienter requirement": A plaintiff must allege that the defendant both (a) knew it distributed works with removed, altered, or fabricated CMI (or removed or altered the CMI itself), and (b) knew that doing so would "induce, enable, facilitate, or conceal" infringement. *Sun v. Xie*, 2025 WL 2467497, at *5 (N.D. Ill. Aug. 27, 2025) (internal quotation marks omitted); *see also Shah v. NYP Holdings, Inc.*, 2023 WL 266511, at *4 (N.D. Ill. Jan. 18, 2023) (Section 1202(a) requires allegation that defendant "knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provided or distributed false CMI), *aff'd*, 2024 WL 3825220 (7th Cir. Aug. 15, 2024); *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020)

8

(same for Section 1202(b) claims). The Complaint satisfies neither standard.

*First*, Plaintiffs do not (and cannot) allege that Google knowingly distributed any work with CMI removed, altered, or falsified, or any allegedly infringing work Google distributed. That precludes any inference that Google had "reasonable grounds to know" that any hypothetical Lyria output bore removed, altered, or fabricated CMI. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (dismissing materially similar Section 1202(b) claim against OpenAI). Even more, Plaintiffs plead no facts asserting that Google's training process targeted any specific CMI for removal. Rather, the Complaint alleges Google applied an automated engineering process across all training inputs (Compl. ¶ 75), a distinction courts have found dispositive at the pleading stage. *See Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D. Cal. 2022) (dismissing Section 1202(b) claim where allegations described an automated engineering process).

*Second*, Plaintiffs fail to allege that Google knew that any such conduct would "induce, enable, facilitate, or conceal" infringement of their works. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (Section 1202(b) requires "affirmative showing" that the defendant was aware the conduct would facilitate infringement). Plaintiffs allege no facts explaining how Google's creation of a "commercial music generator" would "induce, enable, facilitate, or conceal" infringement of their works, much less that Google had malicious intent. Compl. ¶ 8. On the contrary, the Complaint pleads that Google has "filters in place" to check Lyria outputs against existing content (*id*. ¶ 109), and voluntarily operates Content ID, permitting creators to take down any allegedly infringing content posted to YouTube (*id*. ¶ 69). These allegations defeat any inference that Google had the required intent. *See Stevens*, 899 F.3d at 675–76 (dismissing 1202(b) claim where there was no support for inference that defendant knew of infringement risk).

Plaintiffs grasp at straws to meet intent by alleging that Google knew its filtering system

9

was "not foolproof." Compl. ¶ 201. But pleading generalized awareness of copyright risk is not sufficient. *See, e.g.*, *Stevens*, 899 F.3d at 673 (knowledge "someone might be able to use [plaintiffs'] photographs undetected" insufficient for scienter); *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1321, 1325 (11th Cir. 2022) (scienter not satisfied where defendant knew actions would "make infringement generally possible or easier to accomplish").

**B.** **Plaintiffs Fail to State a Claim for Circumvention of Technological Access Controls Pursuant to 17 U.S.C. § 1201 (Count VI)**

Section 1201(a) prohibits circumvention of a technological measure that "effectively controls access" to a copyrighted work, and Section 1201(b) prohibits trafficking in technology "primarily designed or produced for the purpose of circumventing" such measures. *See Agfa Monotype Corp. v. Adobe Sys., Inc.*, 404 F. Supp. 2d 1030, 1034–37 (N.D. Ill. 2005) (reciting elements). Plaintiffs fail to allege either violation.

*First*, the allegation that Google "circumvented" access controls makes no sense: Google would not need to circumvent any access measure, because Plaintiffs voluntarily gave Google access to the works when they chose to upload their content to YouTube. *See supra* at 2.

*Second*, circumvention alone is not enough. The technological measure "must serve as a gatekeeper for all access; after all, a locked back door can hardly be said to effectively control access to a house if its front door is wide open." *Couponcabin LLC v. Savings.com, Inc.*, 2016 WL 3181826, at *6 (N.D. Ind. June 8, 2016) (internal quotation marks omitted) (dismissing circumvention claim where plaintiff made content freely available to online users not specifically blocked). Plaintiffs have not alleged that any technological measure controlled access to the asserted works, which defeats their Section 1201 claim. *See Agfa*, 404 F. Supp. 2d at 1036 (granting defendant's motion for summary judgment on circumvention claim where work was freely available for download on the internet).

10

*Finally*, Plaintiffs' Section 1201(b) trafficking theory also fails because the Complaint identifies no particular circumvention technology. Plaintiffs allege only on "information and belief" that Google "deployed or procured automated tools capable of resolving platform-specific session keys, authentication tokens, or DRM encryption" (Compl. ¶ 193) and "procured or coordinated with third-party data vendors or intermediaries that trafficked in circumvention technologies" (*id*. ¶ 194), but fall short of alleging this undisclosed technology was "primarily designed or produced" for the purpose of circumvention, *Agfa*, 404 F. Supp. 2d at 1040 (requirement not satisfied where technology did not exist "primarily" to circumvent the alleged access control and had other "commercially significant purposes").

### C.  Plaintiffs Fail to State a Claim for Contributory Infringement (Count VIII)

*First*, the Complaint contains no allegations that Google intentionally induced users to generate infringing songs, as necessary to establish contributory copyright infringement under recent Supreme Court authority. *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. ___, 2026 WL 815823 (Mar. 25, 2026). *Cox* instructs that "[t]he provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement." *Id*. at *6. The requisite intent "can be shown only if the party induced the infringement or the provided service is tailored to that infringement." *Id*. The Complaint contains no allegations that Google actively encouraged users to generate infringing songs in Lyria or any of Google's music-generating products, nor that Google's music products were tailored to generate infringing outputs.

*Second*, to state a claim for secondary copyright infringement (either contributory or vicarious), a plaintiff must plausibly allege direct infringement by a third party. *Hart v. Amazon*, 2015 WL 8489973, at *5 (N.D. Ill. Dec. 8, 2015); *Tremblay*, 716 F. Supp. 3d at 777–78 (N.D. Cal. 2024). The Complaint is silent on *any* allegedly infringing output or allegations of similarities between any outputs and particular asserted works. *Hart*, 2015 WL 8489973, at *5 (dismissing

11

where no plausible infringement by a third party); *Tremblay*, 716 F. Supp. 3d at 777–78 (same).

*Third*, the contributory claim fails as to sound recordings because the Copyright Act does not protect the "independent fixation of other sounds" to "imitate or simulate" those in the protected recording. *See* 17 U.S.C. § 114(b); *Richardson v. Kharbouch*, 156 F.4th 849, 858 (7th Cir. 2025) (actual duplication of sound recording required to prove infringement). The Complaint is devoid of any allegation that any Google product generated a musical output comprising or containing actual audio from Plaintiffs' videos. "Copyright protection does not extend to this kind of imperfect mimicry, even when accomplished using advanced technology rather than more traditional techniques like musical covers or impersonations." *Lehrman v. Lovo, Inc*., 790 F. Supp. 3d 348, 378 (S.D.N.Y. 2025) (dismissing copyright claims based on imitation of voice).

### D. Plaintiffs Fail to State a Claim for Vicarious Infringement (Count IX)

Plaintiffs' claim for vicarious liability fails out of the gate for the same reasons as their contributory infringement claim. The Complaint fails to identify any specific direct infringements, plausibly allege substantial similarity, or allege that Google generated outputs containing actual audio from Plaintiffs' videos. *See supra* at 4. The claim also fails because Plaintiffs do not plausibly allege either element of vicarious liability—that Google had (1) control over the alleged direct infringement by users and (2) a direct financial interest in the alleged infringement. *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *3 (N.D. Ill. June 27, 2012).

*First*, the Complaint does not adequately plead control. Plaintiffs' sole allegation to demonstrate Google's control over the acts of its users is that Google "controls the models, servers, and interfaces" that generate outputs, setting and enforcing the policies governing prompts and their filters, by having the capability to "monitor, log and audit prompts and outputs," and by being able to "suspend or terminate users." Compl. ¶ 217. But a defendant's ability to control its own systems or services does not establish the right and ability to control the infringing acts of third

12

parties. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007) (ability to block access to platform does not constitute right and ability to control infringement); *Cengage Learning, Inc. v. Google LLC*, 786 F. Supp. 3d 611, 622–27 (S.D.N.Y. 2025) (Google's ability to control its systems insufficient to state a claim); *Concord Music Grp., Inc. v. X Corp.*, 2024 WL 945325, at *10 (M.D. Tenn. Mar. 5, 2024) (editorial control over user infringement insufficient to state a claim despite ability to control platform).

*Second*, the Complaint's allegations are insufficient to establish the required direct causal relationship between the specific alleged infringement and Google's purported financial gain. Plaintiffs contend Google derives a direct financial benefit from the alleged infringement by earning money through "paid features, subscriptions, and platform engagement," that "[t]he commercial appeal of Google's products increases when outputs are closer substitutes for licensed music," and that Google benefits from using "user prompts, interactions, and generated outputs to improve its models." Compl. ¶ 218. But Plaintiffs fail to plausibly allege that these purported "financial benefits" are causally related to the *infringement* at issue, which is fatal to the claim. *Flava Works*, 2012 WL 2459146, at *4 (dismissing vicarious copyright liability claim for insufficient allegations of direct financial interest); *see also Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 232–33 (4th Cir. 2024), *rev'd on other grounds*, 607 U.S. ___ (2026) (reversing verdict of vicarious liability because financial benefit was not caused by alleged infringement); *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (no direct financial benefit where the "record lacks evidence that AOL attracted or retained subscriptions because of the infringement").

## IV. PLAINTIFFS' LANHAM ACT AND RELATED STATE LAW CLAIMS FAIL

### A. Plaintiffs Fail to State a Claim for False Endorsement (Count X)

The Complaint's scant and speculative allegations fail to state a false endorsement claim under the Lanham Act because they fails to identify any specific output that purportedly gives rise

to false endorsement. *See* 15 U.S.C. § 1125(a).

"The key issue in a false endorsement case is whether defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services." *Staygart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 882–83 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) (internal quotation marks omitted). For false endorsement, "the 'mark' at issue is the plaintiff's identity." *Id.* at 881. Accordingly, to state a false endorsement claim, a "[p]laintiff must be able to show that the public believe[s] that the mark's owner sponsored or otherwise approved of the use of the trademark." *Id.* at 883 (internal quotation marks omitted). Plaintiffs' allegations fall short.

*First*, the Complaint fails to plausibly allege that consumers believe Plaintiffs endorsed Lyria's outputs. Hypothetical and general allegations that "an AI-generated track that was prompted with an artist's name" will lead consumers "to believe the artist endorsed, approved or was affiliated with the track or the service that generated it," Compl. ¶ 228, are not enough. What is missing—specific allegations that describe the characteristics of a particular artist's voice and explain why a track generated by Lyria is similar enough to give rise to a likelihood of association between the two—is key. The Complaint does not describe or attach any examples of Lyria-generated songs that use "artist identifiers" and caused the public to believe those particular outputs were endorsed by Plaintiffs. These pleading deficiencies are fatal to Plaintiffs' claim. *See Fortres Grand Corp. v. Warner Bros. Ent. Inc.*, 763 F.3d 696, 700 (7th Cir. 2014) (bald allegations of consumer confusion "cannot save a claim if they are implausible"); *Lan-Oak Park Dist. v. Lansing J., LLC,* 2025 WL 947890, at *4–5 (N.D. Ill. Mar. 28, 2025) (Lanham Act and related claims dismissed for failure to plausibly allege consumer confusion); *Martin v. Wendy's Int'l, Inc.,* 2017 WL 1545684, at *5–6 (N.D. Ill. Apr. 28, 2017), *aff'd*, 714 F. App'x 590 (7th Cir. 2018) (false

14

endorsement claim dismissed as implausible); *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016), *aff'd,* 845 F.3d 802 (7th Cir. 2017) (same).

*Second*, Plaintiffs' "artist identities" are not alleged to be distinct or well-known enough to sustain a false endorsement claim. For a false endorsement claim to proceed, the complaint must plausibly allege that "the plaintiff [is] 'identifiable' to an ordinary person when perceiving the defendant's accused use." 4 *McCarthy on Trademarks and Unfair Competition* § 28:15 (5th ed.). This is because Section 43(a) does not extend to the non-source identifying uses of the Plaintiffs' voices in outputs. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–37 (2003) (Section 43(a) does not extend to "idea[s], concept[s] or communication[s]" embodied in goods). Accordingly, the Seventh Circuit and other courts addressing the question require some degree of notoriety to state a false endorsement claim. *See Martin v. Living Essentials*, *LLC*, 653 F. App'x 482, 485 (7th Cir. 2016) (Complaint failed to allege "the degree of public notoriety necessary to support a claim under the Lanham Act for false endorsement."); *see also Lehrman*, 790 F. Supp. 3d at 367 ("voices are protectable only to the extent that they function primarily as *source identifiers* rather than as *products themselves*." (emphasis in original)).[4] The Complaint fails to allege specific facts that, if true, establish that these particular aspects of each Plaintiff's identities have sufficient notoriety and are therefore capable of serving as the basis for a false endorsement injury. The Complaint provides no factual basis to conclude that Plaintiffs' "artistic identifiers" would be known to any significant portion of the relevant public. *See Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 111–13 (2d Cir. 2023) (affirming dismissal where recognizability of

---

[4] In the analogous trade dress context, the Supreme Court held that "[n]othing in § 43(a) explicitly requires a producer to show that its trade dress is distinctive, but courts have universally imposed that requirement, since without distinctiveness the trade dress would not 'cause confusion ... as to the origin, sponsorship, or approval of [the] goods' as the section requires." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000); *Plum Markets, LLC v. Compass Grp. USA, Inc.*, 2021 WL 323791, at *2–3 (N.D. Ill. Feb. 1, 2021) (dismissing for failure to describe protectable elements of trade dress).

15

each plaintiff's identity was not proven).

### B. Plaintiffs Lack Standing and Fail to State a Claim for False Advertising Under the Lanham Act (Count XI)

Plaintiffs have no statutory standing to pursue their false advertising claim because they do not allege that Google proximately caused their injury. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132–33 (2014) (Lanham Act § 43(a) standing requires injury that is proximately caused by the allegedly false statements). A showing of proximate cause requires "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. Plaintiffs' allegations do not meet the bar.

Plaintiffs' false advertising claim is grounded in three statements: (1) Google trained Lyria 3 "only on music it has 'a right to use under our terms of service, partner agreements and applicable law'"; (2) Lyria 3 is "designed for original expression, not for mimicking existing artists"; and (3) Google's filtering system "meaningfully vets generated tracks for rights conflicts." Compl. ¶¶ 237–239, 291. Plaintiffs further allege that Google's nondisclosure of Lyria 3's training data constitutes a material omission, on the theory that consumers would not use Lyria 3 if they knew it was trained on Plaintiffs' recordings. *Id.* ¶ 240. Plaintiffs claim that these alleged misrepresentations and omissions have caused them to suffer "diversion of licensing and commissioning opportunities, suppression of licensing rates in sync and production music markets, and loss of market share to AI-generated substitutes that buyers adopted in reliance on Google's representations about sourcing, originality, and safety." Compl. ¶ 242.

There is no support for even an inference that the alleged misrepresentations or purported omissions proximately caused Plaintiffs' claimed harms. The Complaint is silent as to how or why these three statements caused Plaintiffs to lose business opportunities, licensing revenue, or market

16

share. *See Harbour v. Parker Hannifin Corp.,* 2024 WL 4132283, at *7 (N.D. Ind. Sept. 10, 2024) (failure to allege former employee's purportedly defamatory emails caused harm to company fatal to claim). Plaintiffs have no standing to pursue a false advertising claim.

Second, Plaintiffs fail to state a claim. This cause of action, rooted in allegations of consumer fraud, is subject to the heightened standards of Federal Rule of Civil Procedure 9(b). *See Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014). Plaintiffs fail to allege that "the false statement actually deceived or had the tendency to deceive a substantial segment of its audience." *Bd. of Forensic Document Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 833 (7th Cir. 2019) (internal quotation marks omitted). The Complaint contains no allegations that consumers were deceived by these statements, much less in a manner that would harm Plaintiffs. *See Martin v. Living Essentials, LLC,* 160 F. Supp. 3d 1042, 1049–51 (N.D. Ill. 2016), *aff'd,* 653 F. App'x 482 (7th Cir. 2016) (dismissing claim for failing to plausibly allege consumer deception).

**C. Plaintiffs Fail to Allege Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count XVI) or the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count XIV)**

Plaintiffs' ICFA and UDTPA claims fail for the same reasons as their Lanham Act claims. *See supra* §§ IV(A)–(B); *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (the "legal inquiry is the same" under the Lanham Act as under the ICFA and UDTPA claims); *Segerdahl Corp. v. Am. Litho, Inc.*, 2019 WL 157924, at *2 (N.D. Ill. Jan. 10, 2019) (the state law claims "rise and fall with the Lanham Act claim."); *AAVN, Inc. v. WestPoint Home, Inc.*, 2019 WL 1168102, at *4 (N.D. Ill. Mar. 13, 2019) (where plaintiff lacks standing for false advertising claim under the Lanham Act, same defect bars UDTPA and ICFA claims). Accordingly, Plaintiffs' failure to meet the heightened pleading standard for false advertising under the Lanham Act is fatal to Plaintiffs' state law claims. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 2017 WL 6569633, at *6–9 (N.D. Ill. Dec. 21, 2017) (dismissing Lanham Act

and state law claims); *Sharpsmart, Inc. v. Becton, Dickinson & Co.*, 2018 WL 11470992, at *1 (N.D. Ill. May 20, 2018) (same); *CardioNet, Inc. v. LifeWatch Corp.*, 2008 WL 567031, at *3 (N.D. Ill. Feb. 27, 2008) (same). Similarly, the deficiencies that doom Plaintiffs' false endorsement claim—*i.e.*, failure to allege consumer confusion or requisite distinctiveness—apply equally to the state law claims—meaning they "can be knocked out in one fell swoop." *Bovinett v. HomeAdvisor, Inc.*, 2018 WL 1234963, at *6 (N.D. Ill. Mar. 9, 2018); *Hart*, 191 F. Supp. 3d at 820 (dismissing Lanham Act and state law claims where no likelihood of confusion); *Lan-Oak Park Dist.*, 2025 WL 947890, at *4–5 (same); *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 43 (N.D. Ill. 1996) (granting summary judgment for failure to allege celebrity status).

## V. PLAINTIFFS' OTHER STATE LAW CLAIMS FAIL TO STATE A CLAIM

Plaintiffs' remaining state law claims recast the same model-training allegations underlying their copyright claims as privacy and right of publicity violations. Plaintiffs' "information and belief" conjecture fails to state a claim. Plaintiffs cannot plausibly allege that Google collected any of their voiceprints, nor identify any instance when their identities were used. Independently, Plaintiffs' state law claims are preempted by the Copyright Act because they merely disguise their copyright allegations under the veneer of a privacy claim.

### A. Plaintiffs Fail to State a Claim for Violation of the Illinois Biometric Information Privacy Act (BIPA) (740 ILCS 14/1) (Count XII)

Plaintiffs allege a privacy violation through the alleged extraction of their voiceprints to train Google's generative music products. Compl. ¶ 249. BIPA does not define "voiceprint." But Black's Law Dictionary defines the term as a "distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." *Voiceprint*, Black's Law Dictionary (12th ed. 2024). Similarly, the Illinois Office of the Attorney General—highly persuasive authority when interpreting undefined statutory terms—

18

defines a voiceprint as a "physical or behavioral characteristic that identifies a person," *i.e.*, a unique "record of mechanical measurement." Public Access Opinion No. 17-011 ("AG Op."), 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017).[5] Simply stated, a voiceprint (1) details the features of an individual's voice for the purpose of distinguishing it from anyone else's—like a fingerprint—and (2) can be used to identify the individual to whom it belongs. *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1187 (N.D. Cal. 2024) (voiceprint is an "audible fingerprint" (internal quotation marks omitted)). Plaintiffs fail to allege that Google isolated their unique voice characteristics in the first place, much less in a way that could identify each of them.

### 1. Plaintiffs Fail to Allege Google Isolated or Extracted Voiceprints

Plaintiffs' voiceprint theory hangs on one paragraph. Compl. ¶ 249. And even that paragraph is just speculation—that Google "could not have built" Lyria's vocal-generation capabilities without extracting computational representations of human voices. *Id.* (concluding "[t]hose computational representations are voiceprints within the meaning of BIPA"). This conclusory allegation fails to identify any step where Plaintiffs' unique vocal characteristics were isolated, extracted, or stored at an individual level. For instance, there is no allegation that Google collects data on the "time, frequency, and intensity components" of each plaintiff's voice, or that such data is necessary to build a music-generation model. *United States v. Williams*, 583 F.2d 1194, 1197 (2d Cir. 1978). Indeed, Plaintiffs' detailed account of Google's model-training process alleges exactly the opposite: that the underlying recordings were anonymized, chopped up, and then mixed together. *See supra* at 3–4. Generic allegations that Lyria can produce "realistic, natural, and nuanced vocals" with selectable attributes like "male or female, baritone or soprano"

---

[5] *Springfield v. Allphin*, 384 N.E.2d 310, 316 (Ill. 1978) ("a well-reasoned opinion of the Attorney General is entitled to considerable weight in resolving a question of first impression in this State regarding the construction of an Illinois statute").

(Compl. ¶ 249) are insufficient to allege capture of "mechanical measurement[s]" of a voiceprint. *See* AG Op. at *3. And to the extent Lyria produces particular sound characteristics in response to user prompts, Plaintiffs allege that the model learns to do this in the final stage of training. No voice extraction is necessary. *See supra* at 3–4.

The allegations contradict the speculation that Google extracted "voiceprints" in developing Lyria. Plaintiffs allege Google publicly released Magenta RealTime in June 2025 as an "open-weights cousin" of Lyria RealTime, and Google "publicly released the model's learned parameters, allowing anyone to download, run, and inspect the model." Compl. ¶¶ 103 & n.75, 132. But despite the public availability of Magenta RealTime's 800 million parameters, training documentation, and outputs, Plaintiffs fail to identify a single voiceprint in Magenta RealTime or a single speaker who can be recognized from its outputs, and fail to show any structural feature of the model consistent with their voiceprint theory. *Id*. ¶¶ 81, 103–04. Plaintiffs cannot hide behind "information and belief" allegations that Google extracted individual voiceprints for Lyria while simultaneously detailing a trove of public information that belies their theory.[6]

This Court dismissed BIPA claims based on similarly conclusory allegations in *Martell v. X Corp.*, 2024 WL 3011353, at *2 (N.D. Ill. June 13, 2024) (Harjani, J.). There, a BIPA plaintiff alleged that PhotoDNA's creation of a digital "hash" from user-uploaded photos "necessitate[d] creating a scan of that person's facial geography." *Id.* The Court found that a unique per-photo hash "does not necessarily imply that it is scanning for an individual's facial geometry when

---

[6] Plaintiffs' separate allegation that the ProducerAI Privacy Notice "confirm[s] that [Google's] music and voice systems extract biometric voiceprints," is misleading and does not save their claim. Compl. ¶ 250; *see* Schapiro Decl. Ex. F, ProducerAI Privacy Notice (the "ProducerAI Notice"). The ProducerAI Notice has no relationship to Plaintiffs or their works; by its plain terms it applies to recordings ProducerAI users upload. Concerning those works, the ProducerAI Notice provides that "the models may extract a biometric voiceprint from your vocal recording." *See* ProducerAI Notice at 9. The ProducerAI Privacy Notice is incorporated by reference for the same reasons that apply to the TOS. *See supra* § I.

creating the hash." *Id.* The plaintiff's allegations left "open the question of whether the hash is a unique representation of the entire photo or specific to the faces of the people in the picture." *Id.* at *3. The logic of *Martell* is equally applicable here: the allegation that Lyria can synthesize realistic vocals with particular characteristics does not support the theory that Google extracted a BIPA-covered voiceprint from any individual Plaintiff's recordings during training. *See id.*; *see also Hooks v. CloudSpotter Techs. Inc.*, 2026 WL 1045734, at *3 (N.D. Ill. Apr. 17, 2026) (dismissing conclusory BIPA allegations where plaintiff failed to explain how defendant's software "actually operates" in a way that collects biometric information).

### 2. Plaintiffs Fail to Allege the Challenged Data Could Identify Them

Plaintiffs also fail to plead a key aspect of a BIPA claim—that the challenged data has "the ability to identify an individual." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1124 (9th Cir. 2024) ("the ordinary meaning of 'identifier'—since it has an -er suffix—is 'one that identifies'").[7] *Zellmer* is instructive. There, technology generated a "face signature" from social media photos, defined as "a string of numbers that represents a particular image of a face." *Id.* at 1125–26. The court held that even assuming a face signature was created, it was not a biometric identifier because it could not be used to identify the plaintiff. *Id.*

The same logic forecloses Plaintiffs' claim here. Even if the Complaint could allege that voiceprints were ever extracted from the underlying recordings, Plaintiffs fail to advance "allegations demonstrating [defendant] was capable of identifying them from this data." *Clarke v. Aveda Corp.*, 704 F. Supp. 3d 863, 866 (N.D. Ill. 2023). Because identification is "the most

---

[7] As in *Zellmer*, courts in the Seventh Circuit have repeatedly held that biometric information, to fall under BIPA's purview, must be "capable of recognizing an individual's identity, not simply an individual's feature." *G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 800–01 (N.D. Ill. 2024); *see also Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (interpreting "biometric identifier" to mean "a biology-based set of measurements . . . that can be used to identify a person").

foundational aspect of a BIPA claim," their claims fail. *Id.* (internal quotation marks omitted) (dismissing BIPA claims where plaintiff failed to allege identifiable biometrics); *see also Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (same); *Castelaz v. Estee Lauder Cos., Inc.*, 2024 WL 136872, at *7 (N.D. Ill. Jan. 10, 2024) (same).

> 3.     <u>Even if Plaintiffs Had Plausibly Alleged Extraction of Voiceprints, Their BIPA Allegations Still Fail to State a Claim</u>

*The Section 15(b) Claim Fails for Failure to Allege Affirmative Conduct.* Plaintiffs fail to allege that Google took any affirmative step to collect, create, or obtain their voiceprints. It is not enough to allege that the defendant possesses information that, if processed in a certain way, could allow it to create one. *See* 740 ILCS 14/15(b) (applying to the collection, capture, or receipt of biometric identifiers); *deGrasse v. Hyundai Motor Am.*, 2025 WL 1413177, at *3 (N.D. Ill. May 15, 2025) ("[A]n entity must 'undertake some effort to collect or obtain biometric identifiers or information.'"); *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683 (N.D. Ill. 2023) (same).

*The Section 15(c) Claim Fails Because Plaintiffs Allege No Sale of Biometric Data.* Section 15(c) prohibits the sale or lease of biometric data (*e.g.*, to data brokers), not the mere creation of a commercial product that, at some point in its development, used biometric information. *See* 740 ILCS 14/15(c); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021) (describing Section 15(c) as a rule "prohibit[ing] the operation of a market in biometric identifiers"). Plaintiffs' Section 15(c) claim is not viable, as the complaint fails to "allege that Defendant ever used Plaintiffs' biometric data in a commercial transaction with a third party." *Davis v. e.l.f. Cosms., Inc.*, 2024 WL 2722663, at *8 n.4 (N.D. Ill. May 28, 2024) (dismissing claim based on allegations that defendant profited from software-related sales).

*The Section 15(d) Claim Fails Because Plaintiffs Do Not Allege Any Specific Sharing with a Third Party.* Plaintiffs fail to allege any fact supporting their bare assertion that biometric

data was shared with any third party. *See* 740 ILCS 14/15(d) (regulating the disclosure and dissemination of biometric identifiers). For example, the Complaint does not identify (1) with whom the data was allegedly shared, (2) the process by which the sharing occurred, or (3) the purpose for which it was shared. If Plaintiffs have "a legitimate reason to suspect that [the defendant] disclosed his biometric data or that of the putative class members," they should describe the information "possesse[d] . . . that triggered [their] suspicion." *Horn v. Method Prods., PBC*, 2022 WL 1090887, at *3 (N.D. Ill. Apr. 12, 2022) (internal quotation marks omitted) (dismissing 15(d) claim where plaintiff failed to adequately allege that biometric information was disclosed). Plaintiffs' failure to plead any supporting facts is fatal to their Section 15(d) claim. *See also Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (dismissing 15(d) claim where no basis for allegation that biometric data was disclosed).

*The Section 15(e) Claim Fails Because Plaintiffs Allege No Industry Standard, Much Less a Departure from It.* A plaintiff "must, at the very least, allege what the industry standard of care is and how a defendant's practices fell short of that standard." *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *20 (N.D. Ill. Mar. 3, 2025) (citing 740 ILCS 14/15(e) (regulating storage and transmission of biometric identifiers)). But as in *Rodriguez*, Plaintiffs plead "no allegations describing the industry standard of care. Other than repeating the allegations used to support their claims under other BIPA provisions[,] . . . plaintiffs' complaint does not offer any insight into how defendants' practices differed from the standard." *Id.* As with their other BIPA claims, Plaintiffs simply parrot the statutory language. *See* Compl. ¶ 251(e) ("Google failed to store, transmit, and protect biometric identifiers using the reasonable standard of care within its industry[.]").

### B. Plaintiffs Fail to State an Illinois Right of Publicity Act ("IRPA") Claim

#### 1. Plaintiffs' Section 30(a) Claim Fails

A plaintiff seeking relief for a right of publicity claim under Section 30(a) of IRPA must

plead the appropriation of her identity for a commercial purpose. *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019). Plaintiffs fail to state a claim for several independent reasons.

**Plaintiffs Fail to Plausibly Allege the Appropriation of Their Identity.** The Complaint contains no plausible allegation that Google ever used Plaintiffs' identities for any purpose. Plaintiffs allege in conclusory fashion that Google used their voices—but identify no instance in which that ever occurred. *See Dancel*, 949 F.3d at 1008–09 (no IRPA claim where alleged misuse did not explicitly identify the person); *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *7 (N.D. Ill. Aug. 29, 2017) (no IRPA claim where the "complaints do not suggest that the ads identify the plaintiffs in any manner except for name"). And because Plaintiffs do not plausibly allege that Google ever isolated their individual voices in a way that could identify them, Lyria could not have generated an output with a voice that clearly belongs to one of the Plaintiffs. *See supra* § V(A).

**Plaintiffs Do Not Allege Any Use of Their Identity for a Commercial Purpose.** Section 30(a) reaches only conduct with a "commercial" purpose. 765 ILCS 1075/5 (commercial purpose means using an identity in connection with effectuating a commercial transaction). Plaintiffs do not allege Google used their identities to effectuate a sale—*i.e.*, in connection with advertising, offering, or selling a product or service. Rather, Plaintiffs allege only that Google profited from the use of voice recordings in its music-generation products. Compl. ¶¶ 261–262. But that does not state a claim. In *Huston v. Hearst Communications, Inc.*, 53 F.4th 1097, 1100 (7th Cir. 2022), the Seventh Circuit dismissed an IRPA claim where the plaintiff's personal information was sold alongside a list of other subscriber data, because the personal information was not itself used to advertise the list. *See also id.* at 1102 ("It is not enough for [a plaintiff]'s name and other information to appear on or within a product. Her identity must help sell something—whether it is that product or a separate product or service."). Here, too, Plaintiffs fail to allege that their voices

24

were ever used to advertise or promote a separate product or service, which dooms their publicity claim. *See D'Ambrosio v. Rajala*, 783 F. Supp. 3d 1077, 1087–88 (N.D. Ill. 2025) (Harjani, J.) (dismissing IRPA claim brought by social media user whose face was shared in an "Are We Dating the Same Guy?" community for failure to allege commercial purpose, even though his photo "necessarily drove user engagement and therefore Meta's advertising revenue"); *see also Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *1–2 (N.D. Ill. July 1, 2013) (dismissing IRPA claim where defendant made plaintiff's photo available for licensing but his identity was not used to advertise the photo for sale).

*The Audiovisual-Work Exemption Categorically Bars Plaintiffs' Section 30(a) Claim.* The audiovisual-work exemption precludes claims based on the "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in . . . musical work, film, radio, television, or other audio, visual, or audio-visual work," unless the work is "itself a commercial advertisement for a product, merchandise, goods, or services." *Love v. Simmons*, 2024 WL 809107, at *7 (N.D. Ill. Feb. 27, 2024) (quoting 765 ILCS 1075/35(b)(1)) (dismissing IRPA claims brought by plaintiff who briefly appeared in a music video and a Netflix show). The exemption is interpreted broadly because "[c]ourts broadly construe statutory exemptions to prevent First Amendment problems." *Id.* at *8–9. That carveout reflects the statute's limited target: use of identity as a sales lever, not liability for expressive works merely because they are distributed for profit. *D'Ambrosio v. Meta Platforms Inc*., 2026 WL 1361951, at *3–4 (7th Cir. May 15, 2026) (IRPA claim arises from the use of identity "to help sell something"; "a free-floating profit motive is not enough"). Plaintiffs' allegations walk headlong into the exemption. Compl. ¶ 261 (vocal performances were used to "develop, train, and operate commercial music-generation products."); *id.* ¶ 262 (voices were used in a "for-profit AI music service that generates vocal tracks"). These

25

alleged uses, even if they are ever in fixed form, are the sort of "audio" work that falls within the exemption and cannot give rise to a Section 30(a) claim. *See Love*, 2024 WL 809107, at *7.

***Plaintiffs Fail to Allege That an Ordinary Listener Would Recognize Their Voices.*** An IRPA claim must allege not only the defendant's use of the plaintiff's identifying characteristic, but also that the use would identify the plaintiff to the "ordinary, reasonable viewer or listener." *Dancel*, 949 F.3d at 1006 (quoting 765 ILCS 1075/5, 30).[8] Courts considering right of publicity claims based on voice have set an especially high standard. *See Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) (a voice-based right of publicity claim requires that a "distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product"); *Marchman v. Kovel-Fuller, LLC*, 2007 WL 9811116, at *2 (N.D. Ill. July 9, 2007) (citing *Midler* for the right of publicity standard for claims arising out of misappropriation of voice). The Complaint does not allege that Plaintiffs' voices are known to the relevant public or identify any qualities of Plaintiffs' voices that would make them so known.

### 2. Plaintiffs' Section 30(b) IRPA Claim Fails as a Matter of Law

Plaintiffs cannot salvage their IRPA claim by attempting to plead a violation of the newly enacted Section 30(b), which regulates the use of unauthorized digital replicas.

***Plaintiffs Fail to Allege the Existence of a "Digital Replica."*** Section 30(b) requires pleading the existence of a "digital replica"—*i.e.*, an AI-generated version of an individual's voice that is "fixed in a sound recording" and that a "reasonable person would believe is that particular individual's voice . . . being imitated." 765 ILCS 1075/5. But Plaintiffs do not identify any "fixed sound recording" produced by Lyria containing one of their voices. *See* Compl. ¶ 264 (alleging,

---

[8] This standard is so high that using an individual's actual name is not always "sufficient to identify an individual." *Dobrowolski*, 2017 WL 3720170, at *6–7 ("There is no allegation that either plaintiff has the kind of celebrity or public status to be identified by name alone, and there is nothing in the complaint to suggest that the ads identify [these plaintiffs] over any other person bearing [the same] name.").

26

"[o]n information and belief," that "Google's systems generate and distribute sound recordings that contain unauthorized digital replicas of real performers' voices"). Even if Plaintiffs could identify one such instance, the Section 30(b) claim would still fail for the same identifiability deficiency that defeats their Section 30(a) claim: under IRPA, an AI-generated recording qualifies as a "digital replica" only if a "reasonable person would believe" that the recording "is that particular individual's voice." 765 ILCS 1075/5.

> ***Plaintiffs Fail to Allege that Google "Knowingly" Distributed Any Sound Recording Containing a Plaintiff's Voice.*** Plaintiffs acknowledge that Google has "filters in place to check outputs against existing content," Compl. ¶ 10, but attempt to sow doubt by vaguely alleging that Google's output-checking approach is "not foolproof," *id.* ¶ 265. That allegation falls well short of showing Google's "actual knowledge" of digital replicas. *See Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1165 (Ill. App. Ct. 2007) (defining "actual knowledge" as "the awareness at the moment of the transaction" that fraud is occurring). Regardless, the "actual knowledge" requirement practically forecloses a 30(b) claim arising from outputs generated in response to user queries, because such outputs do not involve an independent and knowing act by Google. *See United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023) (in common law, "actual knowledge" refers to whether the person is "aware of" the information).

> ***Plaintiffs Fail to Allege Distribution of a "Sound Recording" to the "General Public."*** Section 30(b) prohibits the distribution of a "sound recording" containing a digital replica "to the general public." 765 ILCS 1075/30(b). But Plaintiffs allege the opposite. Lyria 3 transmits each output only to the individual user who submitted the prompt, not to the public. *See, e.g.*, Compl. ¶ 18. Public disclosure means "to more than just a single person or small group." *Doe v. TCF Bank Ill., FSB*, 707 N.E.2d 220, 221 (Ill. App. Ct. 1999) (public disclosure "means that the matter is

27

made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge" (quoting Restatement (Second) of Torts § 652D cmt. a (1977)); *see also Johnson v. Northshore Univ. HealthSystem*, 2011 WL 10069086, at *6 (Ill. App. Ct. Mar. 31, 2011) (medical records shared with a law firm without authorization were not disclosed "to the public at large"). No Section 30(b) claim results from the distribution of a sound recording to the so-called "general public" of a single person.

### C. Plaintiffs' Unjust Enrichment Claim Fails Because It Is Not an Independent Cause of Action Under Illinois Law

Plaintiffs' unjust enrichment claim should be dismissed. "Under Illinois law, unjust enrichment is not a separate cause of action."[9] *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (affirming dismissal of unjust enrichment claim); *see also Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 324 (7th Cir. 2021) (same); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) (same).

### VI. THE COPYRIGHT ACT PREEMPTS NEARLY ALL THE STATE LAW CLAIMS (COUNTS XII, XIII, XIV, AND XVI)

The Copyright Act preempts state law claims where the work underlying the claim is an original work of authorship under Section 102 and the rights in the state law claims are "equivalent to the exclusive rights under the Copyright Act." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500–01 (7th Cir. 2011) (citing 17 U.S.C. § 301(a)). "[T]o avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—*i.e.*, conduct other than reproduction, adaptation, publication, performance, and display." *Id.* at 501 (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2011)). A state law right is equivalent even if it requires additional elements to make out a cause of action, if those "additional

---

[9] In any event, the Copyright Act would preempt the claim. *See infra* Part VI.

28

elements do not differ in kind from those necessary for copyright infringement." *Carter v. Pallante*, 256 F. Supp. 3d 791, 803 (N.D. Ill. 2017) (quoting *Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 677 n.26 (7th Cir. 1986)).

**BIPA (Count XII).** As detailed above, *supra* § I, Plaintiffs granted YouTube a broad license—affirmatively consenting to the use of their recordings by YouTube and its affiliates in exchange for access to the platform and its global audience. Plaintiffs invoke BIPA in a way that, for all practical purposes, retroactively claws back the license they granted to Google in exchange for marketing their content on the platform. Preemption is intended to ensure that state law cannot overturn a right granted under the Copyright Act, and Plaintiffs' BIPA claims would do just that. *See, e.g.*, *Balt. Orioles*, 805 F.2d at 676–79 (baseball players' right of publicity claims preempted where allegations arose from airing a copyrighted broadcast in which they were featured). Indeed, Plaintiffs implicitly concede such a conflict through their repeated allegations that Google should have paid for a license to use the works for training. *See, e.g.*, Compl. ¶ 91. But Plaintiffs already gave Google a license; allowing a BIPA claim here "would impair the ability of a copyright holder or licensee to exploit the rights guaranteed under the Copyright Act." *In re Jackson*, 972 F.3d 25, 35 (2d Cir. 2020) (preempting right of publicity claim arising from sampling of plaintiff's recording in new work); *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006) (preempting voice-based publicity claim where "essence" of claim was an objection to defendant's use of her recording); *see also X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 850 (N.D. Cal. 2024) (preempting state law claims arising from scraping social media posts for AI training).

**IRPA (Count XIII).** The Copyright Act preempts Plaintiffs' right of publicity claim because it alleges impermissible use of Plaintiffs' voices, as embodied in allegedly infringed copyrighted sound recordings. Compl. ¶¶ 260–261. The Complaint alleges no IRPA-related

29

conduct beyond copying sound recordings that contain Plaintiffs' voices or any other use that is qualitatively different from copyright. *See Balt. Orioles*, 805 F.2d at 663 (preempting right of publicity claim for players who appeared in a baseball broadcast); *see also Laws,* 448 F.3d at 1142–43 (right of publicity claim based on use of a copyrighted voice recording preempted).

*UDTPA (Count XIV).* The claim is based on allegations that "[o]nce an output leaves the interface, no consumer-facing signal identifies the track as AI-generated, discloses the provenance of the underlying expression, or indicates whether any artist endorsed or authorized the output." Compl. ¶¶ 275–276. In essence, Plaintiffs are asserting a reverse passing-off claim, which is preempted by the Copyright Act. *See Carter*, 256 F. Supp. 3d at 805 (UDTPA claim alleging defendants were "passing off the copyrighted songs as their own" preempted); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 999 (N.D. Ill. 2011); *Cyber Websmith v. Am. Dental Ass'n*, 2010 WL 3075726, at *3 (N.D. Ill. Aug. 4, 2010).

*ICFA (Count XVI).* The ICFA claim is premised on alleged misrepresentations that Google's music models were "responsibly sourced," that Google was "mindful of copyright and partner agreements," and that its products were "designed for original expression." Compl. ¶ 291. Whether Google's source content was "authorized" and whether the models produce "original expression" are questions at the heart of the asserted copyright claims, and therefore do not add the extra element necessary to avoid preemption. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc*, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012) (ICFA claim preempted as "simply copyright claim[] in different clothing"); *Defined Space, Inc. v. Lakeshore E., LLC,* 797 F. Supp. 2d 896, 903 (N.D. Ill. 2011) (similar).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: June 8, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (Ill. Bar No. 6209041)
andrewschapiro@quinnemanuel.com
Joseph H. Margolies (Ill. Bar No. 6341926)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400 (phone)
(312) 705-4001 (fax)

Viola Trebicka (admitted *pro hac vice*)
violatrebicka@quinnemanuel.com
Moon Hee Lee (admitted *pro hac vice*)
moonheelee@quinnemanuel.com
Eli Pales (admitted *pro hac vice*)
elipales@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000 (phone)
(213) 443-3100 (fax)

William F. Patry (admitted *pro hac vice*)
williampatry@quinnemanuel.com
Jessica A. Rose (admitted *pro hac vice*)
jessicarose@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000 (phone)
(212) 849-7100 (fax)

*Attorneys for Defendant Google LLC*

31