**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SAM KOGON, DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | Case No. 26-cv-2582 <br><br> Hon. Sunil R. Harjani |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GOOGLE LLC, a Delaware limited liability company, | ) ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO GOOGLE'S MOTION TO DISMISS COMPLAINT

0

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

ARGUMENT..............................................................................................................................3

I.     The YouTube Terms Do Not License Training
A Competing Music Generator ...................................................................................3

II.    Plaintiffs Have DMCA Standing; Registration
Is Nonjurisdictional And Narrow ...............................................................................6

III.    The Complaint States DMCA And Secondary
Copyright Claims ......................................................................................................7

    A.    Plaintiffs State § 1202 Claims (Counts V and VII) ................................7

    B.    Plaintiffs State a § 1201 Claim (Count VI). .........................................11

    C.    Plaintiffs State A Claim For Contributory Infringement (Count VIII)..................12

    D.    Plaintiffs State a Claim For Vicarious Infringement (Count IX)discovery ..........14

IV.    Plaintiffs State Lanham Act And Illinois Deception Claims ...............................................16

    A.    Plaintiffs State a False Endorsement Claim (Count X) ........................................16

    B.    Plaintiffs Have Standing And State a False Advertising Claim (Count XI) .........18

    C.    The ICFA and UDTPA Claims Have Independent Footing (XIV and XVI) .......20

V.    Plaintiffs State Illinois Biometric And Publicity Claims ...................................................21

    A.    Plaintiffs state a BIPA Claim (Count XII) ...........................................................21

    B.    Plaintiffs State an IRPA Digital-Replica Claim (Count XIII) ..............................24

    C.    Unjust Enrichment Is Preserved as Tethered Restitution (Count XV) .................26

VI.    The Copyright Act Does Not Preempt The State-Law Claims.......................................27

A.   BIPA Protects Biometric Privacy, Not Copyright Expression ..............................27

B.   IRPA Protects Identity and Digital Replicas, Not Copyright Expression .............28

C.   UDTPA and ICFA Claims Target Marketplace Confusion and Deception...........29

CONCLUSION.........................................................................................................................30

**TABLE OF CASES**

*Page(s)*

*Agfa Monotype Corp. v. Adobe Sys., Inc.*,
   404 F. Supp. 2d 1030 (N.D. Ill. 2005) ...............................................................11

*Alan Ross Mach. Corp. v. Machinio Corp.*,
   2019 WL 1317664 (N.D. Ill. Mar. 22, 2019).................................................7, 11

*Andersen v. Stability AI Ltd.*,
   700 F. Supp. 3d 853 (N.D. Cal. 2023) ..................................................................8

*Badie v. Bank of Am.*,
   67 Cal App. 4th 779 (1998) ..................................................................................5

*Balt. Orioles, Inc. v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) ..............................................................................28

*BASF Corp. v. Old World Trading Co.*,
   41 F.3d 1081 (7th Cir. 1994)  .............................................................................19

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
   2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) .......................................................5

*Carter v. Pallante*,
   256 F. Supp. 3d 791 (N.D. Ill. 2017) ..............................................................8, 30

*Cengage Learning, Inc. v. Google LLC*,
   786 F. Supp. 3d 611 (S.D.N.Y. 2025)................................................................15

*Clarke v. Aveda Corp.*,
   704 F. Supp. 3d 863 (N.D. Ill. 2023) ..................................................................22

*Couponcabin LLC v. Savings.com, Inc.*,
   2016 WL 3181826 (N.D. Ind. June 8, 2016) ......................................................11

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
   607 U.S. ___, 2026 WL 815823 (Mar. 25, 2026)...............................................12

*Crowley v. Jones*,
   608 F. Supp. 3d 78 (S.D.N.Y. 2022)...................................................................11

*CustomGuide v. CareerBuilder, LLC*,
   813 F. Supp. 2d 990 (N.D. Ill. 2011) ..................................................................30

*Cyber Websmith v. Am. Dental Ass'n*,
    2010 WL 3075726 (N.D. Ill. Aug. 4, 2010) ........................................................30

*D'Ambrosio v. Meta Platforms Inc.*,
    2026 WL 1361951 (7th Cir. May 15, 2026) ................................................24, 26

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)........................................................................................17

*Defined Space, Inc. v. Lakeshore E., LLC*,
    797 F. Supp. 2d 896 (N.D. Ill. 2011) ...............................................................30

*deGrasse v. Hyundai Motor Am.*,
    2025 WL 1413177 (N.D. Ill. May 15, 2025) ....................................................23

*Design Basics, LLC v. WK Olson Architects, Inc.*,
    2019 WL 527535 (N.D. Ill. Feb. 11, 2019) ........................................................9

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ............................................................................6

*Doe 1 v. GitHub, Inc.*,
    2024 WL 235217 (N.D. Cal. Jan. 22, 2024).....................................................7, 9

*Eli Lilly & Co. v. Arla Foods, Inc.*,
    893 F.3d 375 (7th Cir. 2018) ..........................................................................19

*Enhanced Athlete Inc. v. Google LLC*,
    479 F. Supp. 3d 824 (N.D. Cal. 2020) ...............................................................5

*Flava Works, Inc. v. Clavio*,
    2012 WL 2459146 (N.D. Ill. June 27, 2012) .....................................................15

*Fortres Grand Corp. v. Warner Bros. Ent. Inc.*,
    763 F.3d 696 (7th Cir. 2014) ..........................................................................16

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    586 U.S. 296 (2019).......................................................................................7

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
    700 F. App'x 674 (9th Cir. 2017) .....................................................................9

*Gensler v. Strabala*,
    764 F.3d 735 (7th Cir. 2014) ..........................................................................19

iv

*Harbour v. Parker Hannifin Corp.*,
    2024 WL 4132283 (N.D. Ind. Sept. 10, 2024) ....................................................................19

*Heard v. Becton, Dickinson & Co.*,
    440 F. Supp. 3d 960 (N.D. Ill. 2020) ................................................................................23

*Heard v. Becton, Dickinson & Co*,
    524 F. Supp. 3d 831 (N.D. Ill. 2021) ................................................................................23

*Huon v. Denton*,
    841 F.3d 733 (7th Cir. 2016) ............................................................................................13

*Huston v. Hearst Communications, Inc.*,
    53 F.4th 1097 (7th Cir. 2022) ...........................................................................................26

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
    *821 F.3d 935 (7th Cir. 2016)* .............................................................................................4

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020)................................................................................................28

*Jones v. Microsoft Corp.*,
    649 F. Supp. 3d 679 (N.D. Ill. 2023) ...............................................................................23

*Lan-Oak Park Dist. v. Lansing J., LLC*,
    2025 WL 947890 (N.D. Ill. Mar. 28, 2025).......................................................................16

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) .....................................................................................28, 29

*Lehrman v. Lovo, Inc.*,
    790 F. Supp. 3d 348 (S.D.N.Y. 2025)...............................................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................................................18

*Martell v. X Corp.*,
    2024 WL 3011353 (N.D. Ill. June 13, 2024) (Harjani, J.)................................................22

*Martin v. Wendy's Int'l, Inc.*,
    2017 WL 1545684 (N.D. Ill. Apr. 28, 2017), *aff'd*, 714 F. App'x 590 (7th Cir. 2018) ....17

*McDonald v. Symphony Bronzeville Park, LLC*,
    2022 IL 126511 ..................................................................................................................29

*Meyers v. Nicolet Rest. of De Pere, LLC*,
  843 F.3d 724 (7th Cir. 2016) ................................................................................6

*Muhammad-Ali v. Final Call, Inc.*,
   832 F.3d 755 (7th Cir. 2016) ...............................................................................4

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ..............................................................................15

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
  2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ...........................................................30

*Peters v. West*,
  692 F.3d 629 (7th Cir. 2012) ..............................................................................14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ..............................................................................27

*Raw Story Media, Inc. v. OpenAI, Inc.*,
  756 F. Supp. 3d 1 (S.D.N.Y. 2024).......................................................................7

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010) .............................................................................................7

*Richardson v. Kharbouch*,
  156 F.4th 849 (7th Cir. 2025) .............................................................................14

*Robinson v. Toyota Motor Credit Corp.*,
  775 N.E.2d 951 (Ill. 2002) ..................................................................................21

*Russell v. Bogle*,
  No. 23 C 3682, ECF No. 63 (N.D. Ill. May 28, 2024) (Harjani, J.) ....................3

*Seng-Tiong Ho v. Taflove*,
  648 F.3d 489 (7th Cir. 2011) ..............................................................................27

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) .......................................................................................12 n.6

*Souza v. Exotic Island Enters., Inc.*,
  68 F.4th 99 (2d Cir. 2023) ..................................................................................17

*Staygart v. Yahoo! Inc.*,
  651 F. Supp. 2d 873 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010)...............16, 17

*Stevens v. CoreLogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ..............................................................................10

*Thornley v. Clearview AI, Inc.*,
    984 F.3d 1241 (7th Cir. 2021) ............................................................................24

*Timmins Software Corp. v. EMC Corp.*,
    502 F. Supp. 3d 595 (D. Mass. 2020) ...................................................................8

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) .........................................................................27, 28

*Toth-Gray v. Lamp Liter, Inc.*,
    No. 19 C 1327, ECF No. 27 (N.D. Ill. July 31, 2019) ......................................17

*TransUnion, LLC v. Ramirez*,
    594 U.S. 413 (2021) ..............................................................................................6

*U.S. ex rel. Prose v. Molina Healthcare of Ill.*,
    17 F.4th 732 (7th Cir. 2021) .................................................................................9

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
    570 F.3d 849 (7th Cir. 2009......................................................................................13

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ...........................................................................10

*Walsh v. Rokoko Elecs., Inc.*,
    2025 WL 3707044 (C.D. Cal. Dec. 22, 2025) ..................................................6, 7

*X Corp. v. Bright Data Ltd.*,
    733 F. Supp. 3d 832 (N.D. Cal. 2024) ................................................................28

*Zellmer v. Meta Platforms, Inc.*,
    104 F.4th 1117 (9th Cir. 2024) ...........................................................................22

## **INTRODUCTION**

Google, one of the largest companies on earth, built a music business from other people's work. It ingested working musicians' recordings at an industrial scale, totaling hundreds of thousands of hours by its own published count, stripped away the data identifying who made them, and trained commercial products to generate the same kind of music for the same buyers. It asked no one, paid no one, and told no one. The questions of who owned those recordings and who would pay for them were left for someone else to raise later. Plaintiffs raise them now.

The conduct is not in dispute. Plaintiffs allege that Google copied their sound recordings, compositions, and lyrics; stripped the information identifying the works and their owners; modeled the works and the vocal identities embodied in them; and built and sold Lyria 3 and ProducerAI into the very markets where plaintiffs license their work. (Compl. ¶¶ 4, 8–15, 105–122.) Google's research describes keeping 44 million audio clips drawn from 50 million music videos and training on 280,000 hours of recorded music, naming no license, consent mechanism, or rights holder whose permission was ever sought, much less granted. (Compl. ¶ 4.) Google does not deny this. It asks the Court to recast the allegations as a YouTube-hosting dispute, accept an affirmative defense Google has not proven, and resolve disputed facts against plaintiffs. Rule 12 permits none of this.

The YouTube Terms of Service ("Terms") do not support dismissal. The license Google invokes is tethered to YouTube: it permits use of uploaded content "in connection with the Service," not the ingestion of music catalogs to train and commercialize a competing generator. The Complaint does not allege that any Plaintiff personally uploaded any work, accepted the version of the Terms Google selects, had authority to bind every rights owner, or granted Google work-by-work AI-training rights. Google tries to fill those gaps with an attorney declaration

attaching five historical Terms versions, while quoting the 2019 version "for simplicity" (MTD at 2 n.2; Schapiro Decl. ¶¶ 3–7). A declaration is not a pleading-stage admission of assent, version, authority, or scope. Nor could a YouTube license authorize copying from Spotify, Apple Music, Tidal, Amazon Music, or other DRM-protected platforms (Compl. ¶¶ 63, 192–194).

Google's repeated "no output" argument overreaches. For the training-copy, CMI-removal, access-control, and BIPA theories, the injury is not a public output but Google's alleged copying, ingestion, CMI stripping, circumvention, and biometric extraction. For output-dependent claims, the Complaint pleads plausibility based on Google's product design and admissions: the Dream Track's artist-selection workflow, artist-name prompting treated as creative inspiration, realistic vocal generation, downloads, sharing, publishing, rights-holder reporting, and Google's acknowledgment that output checks are "not foolproof" (Compl. ¶¶ 109–117, 207–210, 225). Google controls the output and prompt logs, similarity checks, and moderation records. Rule 8 does not require plaintiffs to prove their claim from Google's internal records before discovery.

The biometric allegations are not speculation. Google asks the Court to conclude that it extracted no voiceprints, even though its ProducerAI Privacy Notice states that Lyria-powered features may extract a "biometric voiceprint," disclose it to third-party providers, and use extracted voiceprints to improve AI and machine-learning models (Compl. ¶¶ 116, 249–251; Ex. F.). Google used BIPA's operative term to describe its voice-processing systems. Whether that extraction reached Plaintiffs' recordings during training is a question of fact the Notice makes plausible, not one the Notice defeats.

Plaintiffs narrow the case in two minor respects and contest the rest.[1] Everything else

---

[1] Plaintiffs do not oppose dismissal without prejudice of the copyright claims for U.S. works the Copyright Office had not registered or refused when this suit was filed, subject to amendment; that concession touches no registered

turns on contract, pipeline, output, and voiceprint facts that can be resolved only after discovery, not in a Rule 12 dismissal with prejudice.

## ARGUMENT

**I.      The YouTube Terms Do Not License Training A Competing Music Generator**

Google's license defense fails on the text, the pleadings, and Google's presentation. Google quotes the license verbs, calls the grant "broad," and stops. (MTD at 4–5.) It does not explain how training Lyria 3 or ProducerAI is "in connection with the Service," how those products promote or redistribute YouTube, how the limiting clauses are reconciled, or which Plaintiff, work, upload, and Terms version supplies assent. A skeletal assertion cannot carry an affirmative defense at Rule 12, and Google should not be permitted to substantively fill those gaps for the first time in reply. *Russell v. Bogle*, No. 23 C 3682, ECF No. 63, at 8 n.5 (N.D. Ill. May 28, 2024) (Harjani, J.).

The Terms license use of content "in connection with the Service," including "promoting and redistributing part or all of the Service" (Ex. E "License to YouTube"). The "Service" is YouTube's platform for discovering, watching, and sharing videos and other content (Ex. E "Our Service"). Lyria 3 and ProducerAI are not hosting, playback, embedding, monetizing, or redistributing the Service. They are music-generation products that allegedly use Plaintiffs' works to generate substitute music in the same markets where Plaintiffs license their work (Compl. ¶¶ 105–122, 126–132).

Google's reading renders "in connection with the Service" surplusage. It treats "Affiliates' business" as permission for any Alphabet company to use uploaded music in any product for any purpose. But the affiliate phrase does not erase the sentence's limiting language.

---

work and no non-copyright claim. Nor do they press unjust enrichment as a freestanding count, though they preserve restitution as a remedy on the surviving claims.

California law requires the contract to be read as a whole, giving effect to every part where reasonably practicable. Cal. Civ. Code § 1641. The surrounding provisions confirm the Terms' service-centered structure. Other users receive rights only "as enabled by a feature of the Service," and no right to use content "independent of the Service"; after removal, YouTube may "retain, but not display, distribute, or perform" server copies. (Ex. E "License to Other Users," "Duration of License.") Those terms fit YouTube platform uses. They do not unambiguously authorize training and commercializing a competing AI music generator. The contrast with ProducerAI[2] confirms the point. When Google sought an AI-training license, it wrote one: ProducerAI's terms grant Google rights to use content to improve and develop products, "including AI and machine-learning technologies." (Compl. ¶ 115.) The Terms contain no comparable language. Google cannot convert silence into a training license at Rule 12.

Nor has Google established that any Plaintiff granted the license it invokes. A license is an affirmative defense. "[T]he burden of proving that the copying was authorized lies with the defendant." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760–61 (7th Cir. 2016). Dismissal on that defense is proper only when the complaint unambiguously establishes every element. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939–40 (7th Cir. 2016). Google must show plaintiff-by-plaintiff assent, the governing Terms version, uploader authority, work-by-work coverage, and scope. The Complaint does not do so. It alleges that Plaintiffs' works were "commercially available on YouTube and other major streaming platforms," not that each Plaintiff personally uploaded each work or accepted the version Google selects. (Compl. ¶ 63.) Directrix, for example, distributes through EmuBands. (Compl. ¶ 39.)

---

[2] After the Complaint was filed, Google renamed ProducerAI "Google Flow Music" and moved it to https://www.flowmusic.app. *See* Google Blog (May 7, 2026), https://blog.google/innovation-and-ai/models-and-research/google-labs/believe-flow-music-partnership/ (last visited June 20, 2026). The platform is the same Lyria 3–powered service the Complaint describes.

The Schapiro declaration does not cure those gaps. It authenticates five versions of the Terms but ties none to any Plaintiff, work, uploader, upload date, or assent. (Schapiro Decl. ¶¶ 3–7.) Google quotes the 2019 version "for simplicity" while asserting that earlier versions are materially similar. (MTD at 2 n.2.) That is not a pleading admission. The 2019 summary cuts against Google's position: YouTube told users the license update requested "no additional permissions" and made "no difference" in how YouTube used content. (Ex. C.) At a minimum, the Terms do not unambiguously authorize the use Google claims. Any ambiguity is construed against Google, the drafter of a standard-form contract. Cal. Civ. Code § 1654; *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 801, 803 (1998).

Even a valid YouTube license would not cover the full case. Plaintiffs' works were distributed on Spotify, Apple Music, Amazon Music, Tidal, Pandora, and other platforms (Compl. ¶¶ 27, 32, 39, 48, 51, 55, 63). Plaintiffs also allege acquisition from sources protected by DRM, encryption, paywalls, API restrictions, and streaming-platform access controls (Compl. ¶¶ 137, 192–194). A YouTube license cannot authorize copying from those sources or from unauthorized third-party user uploads. Nor can it, by itself, satisfy independent statutory duties under the DMCA, Lanham Act, BIPA, IRPA, ICFA, or UDTPA. Google effectively concedes that a YouTube content license cannot displace every independent statutory duty: BIPA requires a separate written release (MTD at 5 n.3).

Google's cases do not expand the Terms. *Business Casual* involved YouTube hosting videos the plaintiff itself uploaded to its own channel; *Enhanced Athlete* involved YouTube's enforcement against plaintiff-uploaded videos. Neither involved non-YouTube sources, DRM-protected platforms, AI training, CMI stripping, biometric voiceprints, identity misuse, false endorsement, or false advertising. The license defense should be denied.

5

## II.        Plaintiffs Have DMCA Standing; Registration Is Nonjurisdictional And Narrow

Google's DMCA standing argument rests on one premise: no identified infringing output, no injury. (MTD at 5–6.) That premise confuses standing with merits and misstates the injury. For § 1202(b), the injury is removal of CMI and distribution of works with CMI stripped. For § 1201, the injury is circumvention and extraction of protected copies. Those injuries occur upstream. A public output is not required to make them concrete.

*TransUnion* supplies the test: a statutory injury is concrete when it bears a close relationship to a traditionally recognized harm. 594 U.S. 413, 424–25 (2021). Plaintiffs plead that relationship with specificity. To strip CMI, Google first copied plaintiffs' works into its pipeline (Compl. ¶¶ 183–185). That actual reproduction is closely related to the long-recognized harm of interfering with an owner's exclusive rights, not the free-floating "informational injury" *TransUnion* found insufficient, where a misleading record reached no one. The resulting impairment of plaintiffs' ability to trace, license, and enforce their rights (Compl. ¶¶ 186–187) is closely related to the appropriation of another's value that restitution has long redressed. And for § 1201, plaintiffs allege that DRM, encryption, and authentication controls protect their works on licensed platforms, which Google or its agents circumvented to extract decrypted audio for training (Compl. ¶¶ 192–195 & n.108). Each injury resembles a traditional harm, establishing concreteness, without converting the § 1202 and § 1201 claims into copyright claims, which turn on different elements.[3]

*Meyers* and *Dinerstein* (MTD at 5-6) require concrete, non-speculative injury; Plaintiffs plead it, as shown above, and the rule applies identically to the § 1201 and § 1202 claims. *Walsh*

---

[3] The impairment is not hypothetical: plaintiffs' works were enrolled, with ownership metadata, in the very rights-management system Google operates, Content ID (Compl. ¶¶ 68–69), so stripping CMI from those same works degrades a tracing-and-enforcement infrastructure these musicians actually use.

*v. Rokoko Elecs., Inc.*, 2025 WL 3707044, at *6 (C.D. Cal. 2025). *Alan Ross* dismissed a § 1202 claim where the plaintiff alleged no concrete harm from the violation. Plaintiffs allege impaired licensing, tracing, enforcement, and market displacement. (Compl. ¶¶ 157, 187.) *Raw Story* and *Doe v. GitHub* are nonbinding and involved pleadings where CMI removal was disconnected from concrete injury. This Complaint pleads the connection those cases found missing: works stripped from ownership signals inside a rights-management ecosystem on which musicians depend. (Compl. ¶¶ 185–188.) At most, the "no output" point goes to the merits of the output-dependent theories (see § III.A), not to Article III standing for the § 1202(b) removal or § 1201 circumvention claims, whose injuries are complete at ingestion.

Google's registration argument is different and narrow. Plaintiffs do not dispute *Fourth Estate*: for a United States work, a copyright claimant ordinarily may sue only after the Copyright Office registers the claim or refuses registration. 586 U.S. 296, 301, 303 (2019). But § 411(a) is a nonjurisdictional precondition to suit, not an Article III bar. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). Plaintiffs do not oppose dismissal without prejudice of direct copyright infringement claims by Mell and the Directrix Plaintiffs to the extent those claims rest on U.S. works listed as "AAA", subject to amendment or supplementation.[4] (Compl. Ex. A rows 39–52, 57–88.) The Complaint limits each copyright count to works "for which the registration prerequisite of § 411(a) is satisfied or does not apply." (Compl. ¶¶ 153, 167, 175.)

## III. The Complaint States DMCA And Secondary Copyright Claims

### A. Plaintiffs State § 1202 Claims (Counts V and VII)

---

[4] Plaintiffs intend to cure these pleading issues by amendment. Several registrations have issued since the Complaint was filed, and applications for the rest are pending. Rather than amend piecemeal as each certificate issues, plaintiffs will re-plead all affected works in a single amendment once the Copyright Office has acted, and in the interim do not oppose dismissal without prejudice of claims resting on works that remain unregistered. Plaintiffs will seek leave to amend promptly thereafter, on whatever schedule the Court prefers.

Google calls the CMI allegations "generic" and "barebones." (MTD at 7.) They are not. Section 1202(c) expressly covers titles, author and owner names, and identifying numbers. 17 U.S.C. § 1202(c), and the Complaint pleads those fields: artist name, track title, ISRC and ISWC codes, copyright notice, label and publisher designations, and ownership metadata. (Compl. ¶¶ 8, 134, 183–184.) It pleads why Plaintiffs' works carried them, too: commercially distributed music carries embedded metadata identifying the work and owner, including ISRCs that "travel[] with recordings wherever they are distributed." (Compl. ¶¶ 8 n.17, 134.)

Google's system confirms plausibility. Content ID requires rights holders to supply "metadata identifying, at a minimum, the title, artist, and record label." (Compl. ¶ 68.) A defendant that demands this metadata to run its rights-management system cannot dismiss as guesswork the allegation that commercial recordings contain it.

Plaintiffs also plead the removal event. Google allegedly acquired works carrying CMI, then stripped embedded metadata "during acquisition, conversion, segmentation, and ingestion," severing the association between each work and its identifying information, and distributed stripped copies to vendors and contractors. (Compl. ¶¶ 185–186.) That gives notice of the CMI categories, the works, the pipeline stage, and the injury. Rule 8 requires no more. *Personal Keepsakes* involved a site-wide copyright notice not conveyed with the work; here, the pleaded metadata is embedded in and travels with each recording. *Andersen* dismissed allegations that artists generally used CMI without identifying plaintiff-specific CMI, the stripping actor, or the stripping event; this Complaint pleads all three. And Google's demand for the "exact type" of CMI on each work and the precise instant of removal (MTD at 7) would graft Rule 9(b) onto a Rule 8 claim. Section 1202 contains no fraud element, *Timmins Software Corp. v. EMC Corp.*, 502 F. Supp. 3d 595, 605 (D. Mass. 2020), and a § 1202 plaintiff need not plead how and when

8

CMI was modified where those facts are in the defendant's possession, *Carter v. Pallante*, 256 F. Supp. 3d 791, 801 (N.D. Ill. 2017).

Google's identicality argument answers a claim plaintiffs do not bring. Count V does not allege that Lyria outputs are identical reproductions. It alleges that Google removed CMI from copies of Plaintiffs' actual recordings during ingestion. (Compl. ¶ 185.) Section 1202(b)(1) targets that removal, whatever Google later did to the files. Google's authority, *Design Basics*, proves the distinction: "[b]asing a [recording] on another's work is not the same as removing [CMI]." (MTD at 8.) Count V alleges removal, not merely "basing." *Doe 1 v. GitHub* and *Frost-Tsuji* involved downstream outputs or developed records, not an ingestion-removal claim directed at copied works that carried CMI before processing. Whether Google's training copies, clips, or model-ready representations also support a downstream-distribution theory depends on Google's pipeline, not a pleading-stage inference against Plaintiffs.

Scienter is plausibly pleaded. Section 1202(b) requires knowledge that CMI was removed and knowledge, or reasonable grounds to know, the removal would induce, enable, facilitate, or conceal infringement. Google demands proof, but the Seventh Circuit rejects says knowledge "may be alleged generally", and a court errs by requiring "concrete evidence of actual knowledge" at the pleading stage. *U.S. ex rel. Prose v. Molina Healthcare of Ill.*, 17 F.4th 732, 745–46 (7th Cir. 2021). The Complaint alleges more than a mental-state label: Google designed a pipeline that systematically removes ownership metadata at scale while operating Content ID, a rights-management system built on the premise that ownership metadata must stay attached to music. (Compl. ¶¶ 68–69, 185, 188.) And it pleads the concealment § 1202 addresses, stripping that information frustrates tracing, licensing, and enforcement. (Compl. ¶ 187.)

9

Google's filter allegations strengthen scienter, not defeat it. A company builds a filter to catch infringing outputs only because it knows its system produces them, and its admission that the filter is "not foolproof" admits that those outputs reach users. (Compl. ¶¶ 69, 109, 188, 201.) That is knowledge of what Google's pipeline does, not the abstract possibility of third-party infringement that *Stevens* and *Victor Elias* found insufficient. (MTD at 9–10.) Plaintiffs allege a designed stripping process by a defendant whose own rights-management business depends on the very metadata it strips, which supplies the "affirmative" knowledge those cases found missing. At Rule 12, that inference runs for Plaintiffs.

Automation is not a defense; it is the mechanism of intent. Section 1202(b)(1) asks whether the removal was intentional, not whether Google "targeted any specific CMI" (MTD at 9); the per-work targeting Google demands is not what the statute requires. A stripping step designed into the pipeline intentionally removes CMI from every work that passes through it (Compl. ¶¶ 185, 188); the intent inheres in the step's design, not in a separate choice for each file. Google's contrary view, that an automated process applied to all inputs cannot be "intentional," would immunize the most systematic CMI removal precisely because it is systematic. *Logan* and *Tremblay* do not hold otherwise: each addressed CMI loss inferred to be an incidental byproduct of generic processing, not a pipeline designed to strip identifying metadata, run by a defendant whose Content ID system depends on that metadata staying attached.

Plaintiffs also state a § 1202(a) false-CMI claim. Google's Lyria-powered systems allegedly attach creator and ownership designations to generated outputs, including user account names, "Playlist created by [username]" labels, and terms stating that the user owns the output. (Compl. ¶ 199.) The Complaint further alleges that those outputs incorporate, recast, or are substantially similar to protected expression from Plaintiffs' works. (Compl. ¶ 200.) Applied to

such outputs, the conveyed CMI is false: the user did not author or own Plaintiffs' expression embodied in the output. *Crowley* and *Alan Ross* addressed accurate self-identification on a defendant's own work. They do not immunize a system that attributes another's protected expression to a user.[5]

### B. Plaintiffs State a § 1201 Claim (Count VI).

Google's § 1201 argument begins and ends with YouTube. It says Google could not have circumvented access controls because the Plaintiffs made works available on YouTube. (MTD at 10.) That does not answer the claim Plaintiffs plead.

Plaintiffs allege technological access controls on licensed platforms including Apple Music, Spotify, Tidal, Amazon Music, and Deezer: DRM, session-keyed streaming encryption, platform authentication, and download-prevention architecture. (Compl. ¶ 192.) They further allege that Google, its agents, or vendors circumvented those controls to extract decrypted audio, convert it to unprotected formats, and store it in Google's training pipeline. (Compl. ¶¶ 193–194.) YouTube availability does not authorize copying from other platforms.

Google's "open front door" cases do not fit. *Agfa* and *Couponcabin* involved open-access or summary-judgment records where the alleged control did not effectively limit access. Plaintiffs allege the opposite: streaming platforms use DRM, authentication, session keys, and download-prevention technology to block extraction of usable audio files. (Compl. ¶¶ 192–195 & n.108.) Whether Google or its vendors bypassed those controls is a factual question about sources and tools Google controls.

---

[5] The § 1202(a) claim does not rise or fall with § 1202(b): the removal claim (Count V) arises from ingestion and needs no public output, while the false-CMI claim concerns the designations Google's systems attach to what they generate (Compl. ¶¶ 109, 199–202). Google's contention that no specific output is identified raises a question of proof, not pleading (see § III.C).

11

Nor must Plaintiffs identify the proprietary ripper, vendor, script, or key-extraction method before discovery; those facts are uniquely in Google's possession, and as with the output demand (§ III.C), Rule 8 does not require Plaintiffs to allege facts that exist only in Google's records. The Complaint pleads the relevant technology categories: tools that resolve platform session keys, authentication tokens, or DRM encryption, and conversion of decrypted streams into unprotected training files. (Compl. ¶¶ 193–194.) Whether those tools were "primarily designed" to circumvent or had commercially significant noninfringing uses is a merits issue about the tools Google selected, not a Rule 12 defect.

### C.     Plaintiffs State A Claim For Contributory Infringement (Count VIII).

Google reads *Cox* as near-blanket immunity for any service with lawful uses. (MTD at 11). *Cox* says otherwise. A provider is contributorily liable where it "induced the infringement or the provided service is tailored to that infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. ___, 2026 WL 815823, at *6 (2026). Google addresses only inducement. The Complaint pleads tailoring.[6]

Google did not build a passive conduit. It built music-generation products that accept artist-identity cues, generate realistic vocals and lyrics, allow downloads and sharing, integrate AI music into YouTube creator workflows, and offer continuation, transformation, and editing

---

[6] *Cox* and *Sony* involved neutral tools whose lawful uses existed independently of the infringement: general Internet access in *Cox*, home time-shifting of lawfully received broadcasts in *Sony*. *Cox*, 2026 WL 815823, at *6–7; *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442, 456 (1984). Lyria and ProducerAI are different. Plaintiffs allege that Google built the generator's entire capability by copying unlicensed music and converting it into model-ready form (Compl. ¶¶ 1, 8, 105–117), so the service cannot be put to a noninfringing use without assuming the lawfulness of those training copies, the merits question Google cannot win at Rule 12. A generic-sounding output is not a "noninfringing use" if the service produces it only by exploiting unauthorized copies. At a minimum, whether Lyria has substantial noninfringing uses cannot be resolved before Google discloses its training corpus, licenses, and output data. *Sony* and *Cox* were decided on developed records, not the pleadings.

tools. (Compl. ¶¶ 106–117, 207–210.) Dream Track[7] makes the design concrete: users selected a real artist, entered a topic, and received an AI-generated vocal performance associated with that artist. (Compl. ¶¶ 110–112.) Google also treats prompts naming specific artists as "creative inspiration" for tracks sharing that artist's "style or mood." (Compl. ¶ 225.) A system designed to generate artist-evoking music is plausibly tailored to infringement under *Cox*.

The Complaint also pleads direct infringement and material contribution. Users allegedly generate and disseminate outputs that copy or are substantially similar to protectable elements of Plaintiffs' works; upload them to YouTube and other platforms; synchronize them to video; and exploit them commercially. (Compl. ¶ 207.) Users also upload copyrighted recordings and use Google's tools to generate unauthorized derivatives. (Id.) Google materially contributes by supplying the models and interfaces, providing download and sharing features, integrating the tools into YouTube workflows, and concealing provenance through CMI removal. (Compl. ¶¶ 209–210.)

Google's demand for a specific output asks for proof, not pleading. Plaintiffs must plead a plausible predicate infringement; they need not attach Google's private output logs to the Complaint. The Seventh Circuit rejects using *Twombly* and *Iqbal* to demand facts available only to the defendant. *Huon v. Denton*, 841 F.3d 733, 742–43 (7th Cir. 2016). Even under Rule 9(b), a plaintiff need not produce internal records at the outset when a plausible inference follows from pleaded facts. *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854–55 (7th Cir. 2009). Google controls the output logs, prompt logs, similarity scores, and moderation records.

---

[7] Dream Track's featured artists are not the plaintiffs, but that does not break the chain. What Dream Track establishes is the product's design: a system built to generate music in the style and voice of named artists. The complaint alleges that plaintiffs' works are among those Google ingested to build it (Compl. ¶ 11), so a system built to evoke the artists in its training set is tailored to produce outputs evoking those artists, plaintiffs included. At Rule 12 that inference runs for Plaintiffs.

13

Plaintiffs plead the design, scale, artist-prompt pathway, admitted filter limits, reporting mechanism, and distribution features that make infringing outputs plausible. (Compl. ¶¶ 79, 84–85, 96, 109, 117, 207–210, 225.) Rule 8 requires no more.

Google's § 114(b) argument is narrow. Section 114(b) limits only the sound-recording right: it protects against duplication of "the actual sounds fixed in the recording," not independently fixed sounds that imitate or simulate them. 17 U.S.C. § 114(b). It does not touch separate copyrights in compositions or lyrics. The Copyright Act treats "musical works, including any accompanying words" and "sound recordings" as distinct categories, 17 U.S.C. § 102(a)(2), (7), and the Seventh Circuit distinguishes the broader rights in compositions from the narrower sound-recording right. *Richardson v. Kharbouch*, 156 F.4th 849, 856–58 (7th Cir. 2025). Composition and lyric claims remain governed by ordinary substantial-similarity principles. *Peters v. West*, 692 F.3d 629, 632–35 (7th Cir. 2012). Count VIII is brought on behalf of composition and lyric classes as well, so § 114(b) does not reach it.

Section 114(b) also does not defeat the sound-recording theory that Plaintiffs plead. *Richardson* requires actual duplication of recorded sounds. 156 F.4th at 858. Plaintiffs allege users upload copyrighted recordings and use Google's tools to generate unauthorized derivative works from that audio. (Compl. ¶ 207.) That is not the independent fixation of merely imitative sounds. *Lehrman* addressed mimicry; it does not foreclose a claim that Google's tools reproduce or transform Plaintiffs' actual recorded audio.

### D. Plaintiffs State a Claim For Vicarious Infringement (Count IX).

Google's vicarious-liability argument fails because it treats Google as a passive platform. The alleged infringement is not payment processing, traffic transmission, or hosting user files. It is the generation of outputs by Google's engine. Google controls the models and interfaces,

14

prompt and output filters, similarity checks, output length, quotas, logs, user access, and the mechanisms for saving, downloading, publishing, and sharing outputs. (Compl. ¶ 217.) Through pre-delivery filters and similarity checks, Google can stop an infringing output before it reaches the user. Where the infringing act is generation by Google's system, control of the system is control of the act.

Google's authorities involved passive intermediaries. *Perfect 10* involved a payment network; *Concord* involved a platform that removed user posts after the fact; *Flava Works* involved linking to and embedding material the defendant did not create. (MTD at 12–13.) None operated the instrumentality that produced the infringement. *Cengage* confirms the line rather than crossing it. There, the court dismissed a vicarious claim because the infringement, the sale of pirated textbooks, occurred on *third-party* pirate sites, and Google's hosting of ads that drove traffic to those sites did not give it the "right and ability to supervise" infringement happening on systems it did not operate. *Cengage Learning, Inc. v. Google LLC*, 786 F. Supp. 3d 611 (S.D.N.Y. 2025). The court contrasted *Napster*, where the infringement occurred on the platform itself and the operator therefore had the requisite control. This case is on the *Napster* side of that line: the infringing act is the generation of the output by Google's engine, on Google's systems (Compl. ¶ 217). Where the infringement happens inside the defendant's system rather than one step removed on a third party's, the control element is satisfied, which is precisely the distinction *Cengage* drew.

The Complaint also pleads direct financial benefit. Google monetizes its music-generation products through paid features, subscriptions, and platform engagement. (Compl. ¶ 218.) The alleged causal link is direct: a commercial music generator is valuable because its outputs substitute for music that users would otherwise license. The Complaint pleads that "[t]he

15

commercial appeal of Google's products increases when outputs are closer substitutes for licensed music—the very characteristic that makes infringement foreseeable." (Id.) Google also uses prompts, interactions, and generated outputs to improve its models, so infringing outputs supply product-improvement value. (Id.) That is a benefit from the infringing activity, not revenue that merely coexists with it.

Google's missing-output demand fails here for the same reason it fails on contributory infringement. The output evidence is in Google's logs; the Complaint pleads the design, controls, distribution channels, and financial incentives that make the claim plausible.

## IV.    Plaintiffs State Lanham Act And Illinois Deception Claims

### A.    Plaintiffs State a False Endorsement Claim (Count X)

Google tries to reduce the Lanham Act claims to copyright by another name. But Plaintiffs plead confusion about artist authorization, not a failure to credit. A false-endorsement claim turns on whether the defendant's use of a person's identity is likely to confuse consumers about sponsorship, approval, or affiliation. *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 882–83 (E.D. Wis. 2009), aff'd, 623 F.3d 436 (7th Cir. 2010).

The Complaint pleads the confusion mechanism: Google's product design. Google built Dream Track as an artist-selection-first interface. A user selected a real artist, entered a topic, and received a track featuring that artist's AI-generated voice. (Compl. ¶ 226.) That design taught consumers that Google's AI-generated music can be artist-authorized. The Complaint alleges those expectations carry over when the same technology generates outputs invoking artists who never consented. (Compl. ¶¶ 225–226.) Google's cases, *Fortres Grand*, *Lan-Oak*, *Martin*, and *Hart,* dismissed confusion theories unsupported by any mechanism capable of producing confusion. Here the mechanism is pleaded, and it is Google's design.

16

*Dastar* does not bar that theory. *Dastar* prevents using § 43(a) to claim authorship credit for creative expression. Plaintiffs do not seek authorship credit for Google's outputs. They allege that Google uses artist identities in a way that falsely signals sponsorship or approval. *Lehrman*, which Google cites, draws the same line: a voice may matter under the Lanham Act "to the extent [it] function[s] primarily as [a] source identifier[]." 790 F. Supp. 3d at 367. The Complaint pleads that artist names, voices, and identity-linked traits signal to listeners and licensees who created, performed, or approved a recording, and that Google uses those cues through artist-name prompting and Dream Track's workflow. (Compl. ¶¶ 224–229.) That is a false-authorization theory, not a failure-to-credit theory, and *Dastar* does not reach it.

Nor does false endorsement require household-name fame. Plaintiffs need only plead facts making it plausible that the relevant audience would recognize the identity cue and infer endorsement, sponsorship, or approval. In *Toth-Gray*, this District rejected the same "not famous enough" argument at Rule 12, holding that Lanham Act plaintiffs need not plead celebrity status and that recognition is assessed by the likelihood of consumer confusion. The relevant inquiry includes "the level of plaintiff's recognition among the segment of the society for whom defendant's product is intended." *Toth-Gray v. Lamp Liter, Inc.*, No. 19 C 1327, ECF No. 27, at 4–5 (N.D. Ill. July 31, 2019); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 883 (E.D. Wis. 2009), aff'd, 623 F.3d 436 (7th Cir. 2010). Here, that market includes sync licensing, production music, commissioned scoring, and related commercial music buyers. (Compl. ¶¶ 46, 235.) The Complaint pleads recognition there. Fiennes has scored fifteen seasons of the BBC's *Death in Paradise* and its spin-off, composed campaigns for Coca-Cola, Ford, and L'Oréal, and produced and written for internationally known artists. (Compl. ¶¶ 45–46.) Kogon performed with Al Jardine of The Beach Boys, wrote with Patty Smyth, fronted The Left Banke's revival, and

17

contributed music to BBC television. (Compl. ¶ 53.) Google's "lesser-known musicians" framing under *Martin* and *Souza* assumes a general-public audience the law does not require.[8] At minimum, recognition in the relevant market is a fact question, not a pleading defect.

Google's demand for a specific confusing output asks for proof. The Complaint pleads artist-name prompting, artist-style generation, Dream Track's artist-voice workflow, realistic vocals, downloads, sharing, publishing, and imperceptible SynthID watermarking. (Compl. ¶¶ 225–230.) Whether particular outputs confuse particular buyers, and how strongly each Plaintiff is recognized in the relevant market, are discovery questions.

### B. Plaintiffs Have Standing And State a False Advertising Claim (Count XI).

Plaintiffs and Google compete in the same markets: sync licensing, production and library music, commissioned scoring, and vocal-performance services. Google now offers project-ready music and lyrics on demand for those same buyers. (Compl. ¶ 235.) A direct competitor's lost sales to a rival's false advertising is the core Lanham injury. *Lexmark* found standing for a plaintiff that was not even a direct competitor; Plaintiffs are comfortably within the zone of interests and plead the direct injury *Lexmark* requires. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–34 (2014).

Google's proximate-cause argument (MTD at 16) misreads the Complaint. *Lexmark* identifies the paradigm injury as a competitor's lost sales when deception causes consumers to withhold trade from the plaintiff. The Complaint pleads that chain: Google's statements about sourcing, originality, and safety led buyers to adopt AI substitutes in reliance on those statements, causing diversion of licensing and commissioning opportunities, suppression of licensing rates, and loss of market share. (Compl. ¶ 242.) Where two sellers compete for the

---

[8] Woulard, ATS, the Burjek Plaintiffs, the Directrix Plaintiffs, and Mell plead commercial music releases, credited authorship or control, and participation in streaming and licensing-adjacent markets. (Compl. ¶¶ 24–43, 49–51.)

same buyers, a buyer diverted to Google's substitute is a direct competitive injury. *Harbour* is not this case; it involved a claim based on defamatory emails by a former employee, not false advertising by a direct competitor in a shared market.

The challenged statements are material commercial representations, not puffery. Google represented that it trained Lyria only on music it had "a right to use," that Lyria is "designed for original expression, not for mimicking existing artists," and that its filters meaningfully vet generated tracks for rights conflicts. (Compl. ¶¶ 237–239.) For buyers choosing between licensing human-created music and using an AI substitute, legal provenance and rights-clearance safety are not vague quality claims. They are decisive product attributes. (Compl. ¶¶ 240–241.)

Rule 9(b) is satisfied, and deception is pleaded. The Complaint identifies the statements, the channels, the February 2026 timeframe, the audience, and why each statement is false or misleading. (Compl. ¶¶ 236–240.) That is the particularity Rule 9(b) requires. *Gensler v. Strabala*, 764 F.3d 735, 738–39 (7th Cir. 2014). The sourcing statement is alleged to be literally false: no terms of service or partner agreement authorized mass copying of Plaintiffs' works for training. (Compl. ¶ 237.) In the Seventh Circuit, a literally false statement "will necessarily deceive consumers," so "extrinsic evidence of actual consumer confusion is not required." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018).

The originality and filtering statements are alleged to be misleading because Google's models can produce outputs incorporating protected expression, and its filters are admittedly "not foolproof." (Compl. ¶¶ 238–239.) Google demands proof, not pleading. Whether an advertisement misleads is a fact question, *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994), and at the pleading stage a plaintiff need only allege plausibly how the relevant buyers would understand it. Plaintiffs do that. Commercial buyers care about sourcing,

19

originality, and filtering because those features bear on whether the product is lawfully sourced, reliably original, and safe to use. The Complaint alleges those considerations are "central to the purchasing and adoption decisions of the relevant audience." (Compl. ¶¶ 240–241.) A statement that a music generator is original and filtered against existing content plausibly tends to deceive buyers who rely on those assurances to avoid that risk.

### C. The ICFA and UDTPA Claims Have Independent Footing (XIV and XVI).

Google's only argument is that the Illinois claims fail with the Lanham claims. (MTD at 17-18.) That argument is twice wrong. The Lanham claims are well-pleaded for the reasons set forth in §§ IV.A–B, so, under Google's derivative logic, the state claims survive with them. And the premise is overstated: the "same legal inquiry" shorthand reflects overlap where claims rest on the same conduct, not a rule importing every Lanham element into the ICFA and UDTPA. Google's cases (MTD at 17–18) dismissed state claims that merely duplicated defective Lanham Act theories. Each statute here independently reaches the alleged conduct.

The UDTPA claim rests on two statutory theories. *First*, Google allegedly causes likely confusion about "source, sponsorship, [or] approval," tracking the false-endorsement theory of § IV.A. (Compl. ¶ 275(a).) *Second*, Google allegedly misrepresents the "characteristics" and quality of its products, tracking the false-advertising theory of § IV.B. (Compl. ¶ 275(b).) The UDTPA also does not require actual confusion or actual damages; a plaintiff need only be "likely to be damaged." 815 ILCS 510/3; (Compl. ¶ 276). Google's Lanham proximate-cause and actual-deception objections therefore do not defeat a UDTPA claim seeking injunctive relief based on likely confusion. (Compl. ¶¶ 276–279.)

The ICFA claim likewise survives on deception and unfairness. The deceptive theory overlaps the false-advertising claim and survives with it. (Compl. ¶ 291.) The unfairness theory

is independent: it does not require a false statement and asks whether the conduct offends public policy, is oppressive, or causes substantial, unavoidable injury. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960–61 (Ill. 2002). The Complaint pleads that Google used opaque ownership and commercialization messaging to drive adoption while withholding material facts uniquely within its control, causing substantial economic injury to Illinois creators that they could not reasonably avoid. (Compl. ¶ 292.) That theory does not collapse into any single statement. ICFA also does not require the Lanham Act's zone-of-interests showing or "commercial advertising or promotion" element, and the complaint pleads Illinois nexus and actual Illinois injury. (Compl. ¶¶ 290, 295.)

## V. Plaintiffs State Illinois Biometric And Publicity Claims

### A. Plaintiffs state a BIPA Claim (Count XII).

BIPA expressly lists "voiceprint" as a biometric identifier. 740 ILCS 14/10. Plaintiffs allege voiceprints, not merely audio. Google's products generate "realistic, natural, and nuanced" vocals with configurable characteristics such as gender, register, and qualities like "gravelly," "soulful," and "breathy." (Compl. ¶¶ 106, 249.) The Complaint alleges that building those capabilities required Google to extract and store computational representations of vocal traits that make voices "identifiable and distinguishable." (Compl. ¶ 249.)

Google's ProducerAI Privacy Notice makes that inference plausible. It states that Google's voice features may "extract a biometric voiceprint from your vocal recording," disclose that voiceprint to "trusted third-party providers," and use "extracted biometric voiceprints" to improve the AI and machine-learning models powering the platform. (Ex. F at 9; Compl. ¶ 250.) Google used BIPA's operative term to describe its own systems. That is not speculation.

21

That is what distinguishes *Martell*. There, this Court rejected a conclusory leap from a per-photo hash to a face-geometry scan because the complaint failed to plead facts linking the hash to biometric measurement. *Martell v. X Corp.*, 2024 WL 3011353, at *2–4 (N.D. Ill. 2024) (Harjani, J.). Plaintiffs plead the missing link here: a voice-based AI product, Google's own "biometric voiceprint" disclosure, and allegations that Lyria's configurable vocal capabilities require the same category of vocal-feature processing during training (Compl. ¶¶ 116, 249–250). *Martell* draws the relevant line: a bare inference from non-biometric hashing is not enough, but allegations tied to an alleged biometric template and Google's voiceprint disclosure fall on the other side.

Google says the Notice applies only to user-uploaded recordings, not Plaintiffs' training data. (MTD at 20 n.6.) That is a factual limitation the Notice does not establish on the pleadings. The Notice ties extracted voiceprints to improving the models that power the platform. (Ex. F at 9.) Combined with the allegation that Lyria's vocal features required modeling training voices, the Notice makes training-stage extraction plausible. Rule 12 does not permit Google to resolve that technical question in a footnote.

Google's identifiability argument, relying on *Zellmer and Clarke*, fails for the same reason. A "voiceprint" is an identifier by statutory designation, and Google calls what it extracts a "biometric voiceprint." 740 ILCS 14/10; (Ex. F at 9.) The Notice's statement that Google does not use voiceprints "for purposes of recognizing or identifying a particular individual" addresses use, not collection or status. BIPA regulates collection, possession, retention, disclosure, and profit from biometric identifiers regardless of whether Google says it used the identifier for recognition. And the Notice says the voiceprint is extracted to mimic "your voice," confirming it is speaker-specific. Google's Magenta argument is likewise a contested inference about a

22

different model and the wrong moment. The question is what Google extracted during processing, not what one downstream open-weights model later retained.

Plaintiffs plead each BIPA subsection. Section 15(b) is pleaded because Google allegedly extracted and stored computational voiceprints from copied vocal performances, and Google's Notice describes the same affirmative act: extracting a biometric voiceprint from a vocal recording. (Compl. ¶¶ 248–251; Ex. F at 9.) *deGrasse* and *Jones* are passive-possession cases; this Complaint alleges extraction.

Section 15(d) is pleaded because the Notice itself supplies the basis Google says is missing. It states that Google may disclose extracted data, including biometric voiceprints, to trusted third-party providers. (Ex. F at 9.) The Complaint alleges disclosure to vendors involved in data processing, labeling, evaluation, and model development. (Compl. ¶ 251(d).) *Heard* (MTD 23) initially dismissed 15(d) allegations but denied a later motion on 15(d) after amendment. *Heard v. Becton, Dickinson & Co*, 524 F. Supp. 3d 831 (N.D. Ill. 2021). *Horn* dismissed bare disclosure allegations with no supporting facts. Here the supporting fact is Google's admission.

Section 15(a) is pleaded because Plaintiffs allege voiceprint possession and no public retention/destruction policy for training-data voiceprints. (Compl. ¶ 251(a).) Google did not separately move to challenge this subsection.

Section 15(e) is pleaded because Plaintiffs allege the statutory benchmark and departure: Google failed to protect voiceprints using the reasonable standard of care in its industry and in a manner at least as protective as it protects its own confidential information. (Compl. ¶ 251(e); 740 ILCS 14/15(e).) The alleged unauthorized extraction, retention without a disclosed policy, and third-party disclosure support the inference that Google did not apply the required

23

safeguards. *Rodriguez* demanded more where the plaintiff pleaded no standard or departure. Here, BIPA supplies the benchmark, and Google's Notice supplies the disclosure facts.

Section 15(c) is pleaded because Plaintiffs allege that Google profited from voiceprints by commercializing voiceprint-driven features, including features designed to mimic a user's voice, through paid products. (Compl. ¶ 251(c); Ex. F at 9.) *Thornley* described the data-broker paradigm; it did not hold that a paid voice-mimicry product falls outside "otherwise profit[ing] from" a biometric identifier. 740 ILCS 14/15(c). At minimum, whether Google profited from biometric identifiers themselves or only from unrelated software is not resolvable on the pleadings.

**B.      Plaintiffs State an IRPA Digital-Replica Claim (Count XIII).**

Plaintiffs' IRPA claim principally rests on § 30(b), the digital-replica provision enacted to reach AI-generated voice replicas. That provision does not require a commercial purpose. *D'Ambrosio v. Meta Platforms Inc.*, 2026 WL 1361951, at *3 n.2. Google's commercial-purpose cases address § 30(a); they do not defeat § 30(b).

Section 30(b) prohibits knowingly distributing or making available to the general public a sound recording containing an unauthorized digital replica. 765 ILCS 1075/30(b). A digital replica is an AI-generated representation of an individual's voice, fixed in a sound recording, that a reasonable person would believe is that individual's voice. 765 ILCS 1075/5. The Complaint tracks that standard. It alleges that Google's systems generate realistic vocals, use artist-referential prompting, and create sound recordings that replicate the distinctive vocal characteristics of identifiable performers. (Compl. ¶¶ 260, 263–265.)

Google's "single user" argument misreads the pleaded distribution. Plaintiffs do not allege only private generation. ProducerAI allows users to create tracks, share them, download

24

finished audio, and publish or distribute generated music through any channel. (Compl. ¶¶ 113–117.) Dream Track places AI-generated music into YouTube creator workflows, and Lyria is available through APIs. (Compl. ¶¶ 110–112, 118–120, 261.) Whether those product features make a sound recording available to the general public is a fact question, not a pleading defect.

Google's identifiability argument also imports the wrong standard. Section 30(b) asks whether a reasonable person would believe the AI-generated voice is the individual's voice. 765 ILCS 1075/5. That is a resemblance inquiry, applied to the output. It is not a threshold requirement that the artist be famous to the general public. The Complaint alleges that Plaintiffs' voices have distinctive timbre, tone, cadence, phrasing, and stylistic vocal expression. (Compl. ¶ 260.) Whether a particular output sounds like a particular Plaintiff is an evidentiary issue. *Midler* is non-binding and was decided on a trial record, not the pleadings.

Google's "no exemplar output" argument is the same proof demand it makes throughout the motion. Plaintiffs plead vocal realism, artist-referential prompting, downloads, sharing, APIs, "not foolproof" checks, and Google's control of output records. (Compl. ¶¶ 106–117, 120, 208, 225, 264–265.) The output logs, prompt logs, similarity checks, reports, and distribution records are in Google's systems.

Knowledge is also plausibly pleaded. Section 30(d) reaches a person who materially contributes to, induces, or facilitates distribution after actual knowledge. 765 ILCS 1075/30(d). Google built and operates the systems that create the recordings, controls the interfaces through which they are generated and distributed, enables downloads and sharing, and acknowledges that output checks are "not foolproof." (Compl. ¶¶ 208, 265.) Google also operates reporting mechanisms and controls the records that would show notice of particular replica outputs; at Rule 12 plaintiffs need plausibility, not Google's output logs (*cf.* § III.C).

Section 30(a) supplies an alternative theory. Plaintiffs allege more than passive identity adjacency. Google allegedly copied Plaintiffs' vocal performances, modeled their distinctive vocal characteristics, and used those characteristics as functional inputs to products it monetizes through subscriptions, paid access, and APIs. (Compl. ¶¶ 260–262.) The voice is not near the product; it is part of what the product sells. *D'Ambrosio* and *Huston* involved identities displayed adjacent to a service or publication, not extraction and productization of voice identity as a generator capability.

The audiovisual-work exemption does not bar either theory. As to § 30(a), Plaintiffs challenge Google's extraction and use of voice identity to build and operate AI music products, not merely the inclusion of a person's identity in a completed expressive work. As to § 30(b), the exemption does not apply at all. Section 35(b) states that "Subsections (a) and (c) of Section 30" do not apply to certain expressive uses; it omits § 30(b). 765 ILCS 1075/35(b). The Act then separately identifies the exemptions that apply to "Subsections (b) and (c) of Section 30." 765 ILCS 1075/35(c). Google cannot move § 30(b) into § 35(b) by calling a digital replica an audio or audiovisual work. That reading would erase the statute's deliberate separation between § 30(a) identity-use exemptions and § 30(b) digital-replica exemptions. Illinois courts reject readings that render statutory text superfluous, and specific provisions control general ones. *People v. Clark*, 2019 IL 122891, ¶ 20.

Identifiability is also not a pleading bar to the § 30(a) claim, which is brought by the Illinois plaintiffs (Compl. ¶¶ 258, 268), whose distinctive voices are embodied in the recordings Google copied (Compl. ¶ 260). Whether a reasonable person would recognize a plaintiff's voice is an evidentiary question Google's authorities resolved on developed records, not the pleadings.

**C.**     **Unjust Enrichment Is Preserved as Tethered Restitution (Count XV).**

26

Plaintiffs do not defend unjust enrichment as an independent cause of action untethered to unlawful conduct. Count XV is pleaded in the alternative under Rule 8(d)(2)–(3), seeking no duplicative recovery (Compl. ¶ 281), which resolves Google's *Pirelli* argument. If the Court concludes the count cannot stand alone, Plaintiffs request dismissal without prejudice only to that extent, while preserving restitution, disgorgement, accounting, and constructive-trust remedies tied to surviving claims.[9] (Compl. ¶¶ 282–285; Prayer for Relief ¶ F(5).)

## VI. The Copyright Act Does Not Preempt The State-Law Claims

Factual overlap is not preemption. Section 301 asks whether the state-law right is equivalent to a § 106 copyright right. It is not enough that the same facts appear in both claims. *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 500–01 (7th Cir. 2011); *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). Each state-law count adds a different right and injury.

### A. BIPA Protects Biometric Privacy, Not Copyright Expression.

Google does not show that BIPA is equivalent to § 106. It argues instead that Plaintiffs "already gave Google a license," so BIPA would "retroactively claw[] back" that license. (MTD at 29.) That is the license defense in a preemption caption. It fails because Google has not established any license covering AI training, much less biometric extraction. It also fails because a copyright license is not a BIPA release. Google concedes BIPA requires a "separate" written release before obtaining biometric information. (MTD at 5 n.3.)

BIPA regulates voiceprints, not songs. Plaintiffs allege that Google extracted, stored, disclosed, and profited from voiceprints without BIPA-compliant notice, written release, retention policy, disclosure consent, or safeguards. (Compl. ¶¶ 248–255.) None of those duties

---

[9] Google's footnote suggesting that the Copyright Act preempts the count (MTD at 28 n.9) is undeveloped and is answered in § VI: the count is tied to the non-equivalent § 1202, BIPA, and IRPA wrongs, the "extra element" the complaint pleads (Compl. ¶ 284), not to copying alone.

27

exists under § 106. The recording is the source of the alleged voiceprint, not the object of the claim. The same extraction would violate BIPA if performed on a public-domain recording or a recording that supplied no enforceable copyright infringement claim.[10] Plaintiffs do not argue that registration status defeats § 301's subject-matter prong; the point is equivalence. BIPA's biometric-consent regime is not equivalent to copyright.

Google's cases (MTD at 29) do not say otherwise. *Baltimore Orioles*, *Laws*, and *In re Jackson* involved publicity claims aimed at the use of fixed performances or copyrighted recordings. *Laws* involved a licensed sample of the plaintiff's actual recorded voice and distinguished voice-imitation cases like *Midler*; *In re Jackson* likewise involved a sample from a copyrighted recording. None involved BIPA or biometric privacy. *X Corp.* is further afield: it concerned scraping and selling public platform data, not a biometric statute imposing notice, consent, retention, disclosure, and security duties.

## B. IRPA Protects Identity and Digital Replicas, Not Copyright Expression.

Google's IRPA argument repeats the error. It says the claim rests on voices "embodied in" copyrighted recordings. (MTD at 29–30.) But the Seventh Circuit rejected that equivalence in *Toney*: an Illinois identity claim is not preempted because identity "is not fixed in a tangible medium of expression," is "not a work of authorship," and its commercial use is qualitatively different from reproducing a copyrighted work. 406 F.3d at 908–10. Google cites *Toney* for the governing standard (MTD at 28) while ignoring its holding, and *Toney* post-dates and narrows *Baltimore Orioles*, the broadcast-performance case Google leads with. IRPA protects the same interest *Toney* protected: control over the commercial use of identity, including the voice as a

---

[10] Plaintiffs do not argue that lack of registration defeats § 301's subject-matter prong. The point is equivalence: BIPA protects against biometric extraction without notice, release, retention limits, disclosure consent, or safeguards, not reproduction of expression.

component of personal identity, not the expression fixed in a recording. (Compl. ¶ 269.)

The § 30(b) digital-replica theory is even further from copyright. It targets a newly created AI-generated representation of a voice that a reasonable person would believe is the individual's voice. (Compl. ¶¶ 263, 269.) That claim does not seek control over a fixed recording. It targets a synthetic replica of a persona. *Laws* is not contrary because it involved the plaintiff's actual recorded voice, not an AI-generated replica.

Google's reading would gut the 2024 digital-replica amendment in the cases it was enacted to reach. Section 30(b) targets AI voice replicas fixed in sound recordings, and the paradigm replica is one modeled from a commercial recording. If every such claim were preempted whenever the defendant modeled the voice from a copyrighted recording, the amendment would not reach the very conduct that prompted it. Illinois courts do not read a specific, later-enacted provision to be swallowed by a general right it was passed to address. Illinois courts read statutes to give effect to specific provisions rather than render them superfluous. *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 45.

### C.     UDTPA and ICFA Claims Target Marketplace Confusion and Deception.

Google's preemption argument works only by rewriting the counts, recasting the UDTPA claim as reverse passing-off and the ICFA claim as a dispute over whether Google's sources were "authorized." (MTD at 30.) Neither characterization matches the pleading.

The UDTPA claim is not that Google copied or failed to credit Plaintiffs. It is that Google releases AI-generated music "in a manner likely to cause confusion about whether real artists created, endorsed, or approved the tracks," without consumer-facing signals of provenance, authorization, rights clearance, or AI generation. (Compl. ¶¶ 18, 275–276.) That is source, sponsorship, approval, authorization, and product-characteristics confusion. Section 106 requires

29

no proof that consumers were confused about who approved a track or whether it is safe to license. *Carter*, *CustomGuide*, and *Cyber Websmith* involved claims that duplicated reverse-passing-off theories (passing off the plaintiff's copyrighted works as the defendant's). Plaintiffs' claim rests on endorsement and authorization confusion, not creative authorship.

The ICFA claim adds elements copyright does not contain: Illinois trade or commerce, deception or unfairness, materiality, and actual Illinois economic injury. (Compl. ¶¶ 290–292.) Google says the claim turns on whether training was "authorized" and outputs were "original." (MTD at 30.) Those facts explain why Google's commercial statements were misleading; they are not the claim. The ICFA wrong is marketplace deception and unfairness: Google allegedly withheld material facts to drive adoption, conduct that "offends established public policy" and causes substantial injury Illinois creators could not reasonably avoid. (Compl. ¶ 292.)

*Personal Keepsakes* and *Defined Space* do not hold that every deceptive-practices copyright claim is preempted. To the extent any fragment of these counts could be read to rest on copying alone, Plaintiffs do not press that theory. These claims stand on confusion, deception, ownership messaging, rights-clearance safety, and Illinois economic injury.

## **CONCLUSION**

Google's motion depends on a license no plaintiff is alleged to have accepted and on facts only discovery can resolve. At Rule 12, the inferences run for Plaintiffs. The defect is not in the complaint; it is in a defense Google cannot prove on this motion. The Court should deny it except that plaintiffs do not oppose dismissal without prejudice of Mell's and the Directrix Plaintiffs' direct copyright claims resting on U.S. works the Copyright Office had not registered or refused when this action was filed, subject to amendment, and of unjust enrichment as a standalone count, preserving restitution and disgorgement as remedies on the surviving claims.

Dated: June 29, 2026

Respectfully submitted,

LOEVY & LOEVY

/s/ Ross Kimbarovsky

_____

Ross Kimbarovsky (6229590)
ross@loevy.com
Jon Loevy (6218524)
jon@loevy.com
Michael Kanovitz (6275233)
mike@loevy.com
Matthew Topic (6290923)
matt@loevy.com
Aaron Tucek (98624)
aaron@loevy.com
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312.243.5900 (phone)
312.243.5902 (fax)

*Attorneys for Plaintiffs Sam Kogon, David Woulard, Attack the Sound LLC, Stan Burjek, James Burjek, Berk Ergoz, Hamza Jilani, Maatkara Wilson, Arjun Singh, Magnus Fiennes, and Michael Mell.*

31