**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAM KOGON, DAVID WOULARD, ATTACK THE SOUND LLC, an Illinois limited liability company, STAN BURJEK, JAMES BURJEK, BERK ERGOZ, HAMZA JILANI, MAATKARA WILSON, ARJUN SINGH, MAGNUS FIENNES, and MICHAEL MELL, each individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>   v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br>        Defendant. | Case No. 26-cv-2582<br><br>Honorable Sunil R. Harjani |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF GOOGLE LLC'S
<u>MOTION TO DISMISS COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................1

ARGUMENT......................................................................................................................2

I.    The Opposition Does Not Rebut Plaintiffs' Broad License to YouTube ...........................2

II.   Plaintiffs Lack Standing to Bring Their DMCA Claims .....................................................5

III.  Plaintiffs Fail to State a Claim for Their DMCA and Copyright Claims ...........................5

      A.    Plaintiffs' Section 1202 Claims Fail (Counts V and VII).......................................5

            1.    Plaintiffs Fail to Allege the Existence of CMI in Their Copyrighted Works........................................................................................................5

            2.    Plaintiffs' Section 1202 Claims Fail the Statute's Identicality Requirement.................................................................................................6

            3.    Plaintiffs Fail to Allege Double Scienter for Their Section 1202 Claims .........................................................................................................6

      B.    Plaintiffs' Section 1201 Circumvention Claim Fails (Count VI) ...........................8

      C.    Plaintiffs Fail to State a Claim for Contributory Infringement (Count VIII) ..........9

      D.    Plaintiffs Fail to State a Claim for Vicarious Infringement (Count IX) .................9

IV.   Plaintiffs' Lanham Act and Related State Law Claims Fail ...............................................13

      A.    Plaintiffs Fail to State a Claim for False Endorsement (Count X) .........................5

      B.    Plaintiffs Lack Standing and Fail to State a Claim for False Advertising Under the Lanham Act (Count XI) .......................................................................11

      C.    Plaintiffs Fail to Allege Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count XVI) or the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count XIV) .......................12

V.    Plaintiffs' Other State Law Claims Fail..............................................................................13

      A.    Plaintiffs Fail to State a Claim for Violation of the Illinois Biometric Information Privacy Act (BIPA) (740 ILCS 14/1) (Count XII) ...........................13

            1.    Plaintiffs Fail to Allege Google Isolated or Extracted Voiceprints...........14

            2.    Plaintiffs Fail to Allege the Challenged Data Could Identify Them .........15

            3.    Even if Plaintiffs Had Plausibly Alleged Extraction of Voiceprints, Their BIPA Allegations Still Fail to State a Claim.................................16

      B.    Plaintiffs Fail to State an Illinois Right of Publicity Act ("IRPA") Claim............17

      C.    Plaintiffs Concede Unjust Enrichment Is Not an Independent Cause of Action..................................................................................................................19

VI.   Nearly All State Law Claims Are Preempted (Counts XII-XIII, XIV-XVI)....................19

i

CONCLUSION..................................................................................................................20

ii

**TABLE OF CASES**

**Page**

*188 LLC v. Trinity Indus., Inc.*,
  300 F.3d 730 (7th Cir. 2002) ............................................................................................3

*AAVN, Inc. v. WestPoint Home, Inc.*,
  2019 WL 1168102 (N.D. Ill. Mar. 13, 2019).................................................................12

*Agfa Monotype Corp. v. Adobe Sys., Inc.,*
  404 F. Supp. 2d 1030 (N.D. Ill. 2005) .............................................................................8

*Alan Ross Mach. Corp. v. Machinio Corp.*,
  2019 WL 1317664 (N.D. Ill. Mar. 22, 2019)...................................................................6

*Art Recs. LLC v. Youtube LLC.*,
  2026 WL 1669167 (N.D. Cal. June 9, 2026).....................................................................9

*Barnes v. Sanchez*,
  2026 WL 1912085 (N.D. Cal. July 2, 2026)................................................................9, 10

*Brantley v. Prisma Labs, Inc.*,
  2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) ...................................................................15

*Brechbill v. Home Invest LLC*,
  2018 WL 4384297 (N.D. Ill. Sept. 14, 2018) ...................................................................2

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
  2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) .....................................................................2

*CardioNet v. LifeWatch Corp.*,
  2008 WL 567031 (N.D. Ill. Feb. 27, 2008) ....................................................................13

*Couponcabin LLC v. Savings.com, Inc.*,
  2016 WL 3181826 (N.D. Ind. June 8, 2016) .....................................................................8

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
  146 S. Ct. 959 (2026).....................................................................................................1, 9

*CustomGuide v. CareerBuilder, LLC*,
  813 F. Supp. 2d 990 (N.D. Ill. 2011) .............................................................................20

*Dancel v. Groupon, Inc.*,
  949 F.3d 999 (7th Cir. 2019) ..........................................................................................19

*Davis v. e.l.f. Cosms., Inc.*,
  2024 WL 2722663 (N.D. Ill. May 28, 2024)..............................................................16, 17

*Defined Space, Inc. v. Lakeshore E., LLC,*
    797 F. Supp. 2d 896 (N.D. Ill. 2011) ........................................................................20

*deGrasse v. Hyundai Motor Am.,*
    2025 WL 1413177 (N.D. Ill. May 15, 2025) .............................................................16

*Dent v. Renaissance Mktg. Corp.,*
    2014 WL 5465006 (N.D. Ill. Oct. 28, 2014)..............................................................20

*Doe 1 v. GitHub, Inc.,*
    2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ...............................................................5

*Eight Mile Style v. Meta Platforms, Inc.*
    2026 WL 1735026 (E.D. Mich. June 16, 2026).........................................................9

*Ellison v. Robertson,*
    357 F.3d 1072 (9th Cir. 2004) .................................................................................10

*Enhanced Athlete Inc. v. Google LLC,*
    479 F. Supp. 3d 824 (N.D. Cal. 2020) .....................................................................4

*Fergon Architects LLC v. Oakley Home Builders, Inc.,*
    2014 WL 340035 (N.D. Ill. Jan. 30, 2014)...............................................................20

*Heard v. Becton, Dickinson & Co.,*
    524 F. Supp. 3d 831 (N.D. Ill. 2021) .......................................................................17

*Hyson USA, Inc. v. Hyson 2U, Ltd.,*
    821 F.3d 935 (7th Cir. 2016) ....................................................................................2

*Jones v. Microsoft Corp.,*
    649 F. Supp. 3d 679 (N.D. Ill. 2023) .......................................................................16

*Kolstad v. Am. Dental Ass'n,*
    527 U.S. 526 (1999)..................................................................................................8

*Laws v. Sony Music Ent., Inc.,*
    448 F.3d 1134 (9th Cir. 2006) .................................................................................19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014)...........................................................................................11, 12

*Marshall v. ESPN Inc.,*
    111 F. Supp. 3d 815 (M.D. Tenn. 2015)...................................................................10

*Martell v. X Corp.,*
    2024 WL 3011353 (N.D. Ill. June 13, 2024)............................................................15

iii

*MillerKing, LLC v. DoNotPay, Inc.*,
 702 F. Supp. 3d 762 (S.D. Ill. 2023)..................................................................................12

*In re Mosaic LLM Litig.*,
 2025 WL 2402677 (N.D. Cal. Aug. 19, 2025) ......................................................................5

*Navistar, Inc. v. New Baltimore Garage, Inc.*,
 2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) ......................................................................8

*Oliveira v. Amoco Oil Co.*,
 201 Ill. 2d 134 (2002) ......................................................................................................13

*Ottaviani v. Rubino*,
 2024 WL 3442963 (N.D. Ill. July 17, 2024).......................................................................12

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.,*
 2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ..........................................................................20

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.,*
 975 F. Supp. 2d 920 (N.D. Ill. 2013) .................................................................................20

*Phillips v. Prudential Ins. Co. of Am.*,
 714 F.3d 1017 (7th Cir. 2013) ...........................................................................................14

*Pippen v. NBCUniversal Media, LLC,*
 734 F.3d 610 (7th Cir. 2013) ...............................................................................................7

*Raw Story Media, Inc. v. OpenAI, Inc.,*
 756 F. Supp. 3d 1 (S.D.N.Y. 2024) ...........................................5 BA_Cite_2A028C_000085

*Rodriguez v. ByteDance, Inc.*,
 2025 WL 672951 (N.D. Ill. Mar. 3, 2025)...........................................................................17

*Sanchez v. Walmart*,
 733 F. Supp. 3d 653 (N.D. Ill. 2024) .................................................................................13

*Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*,
 2024 WL 5221272 (N.D. Ill. Dec. 23, 2024)........................................................................11

*Sun v. Xie*,
 2025 WL 2467497 (N.D. Ill. Aug. 27, 2025) ........................................................................7

*Thompson v. Getty Images, Inc.*,
 2013 WL 3321612 (N.D. Ill. July 1, 2013)..........................................................................19

*Thornley v. Clearview AI, Inc.*,
 984 F.3d 1241 (7th Cir. 2021) ...........................................................................................16

iv

*In re Tobacco Cases I,*
  186 Cal. App. 4th 42 (2010) ....................................................................................4

*Toney v. L'Oreal USA, Inc.,*
  406 F.3d 905 (7th Cir. 2005) ................................................................................20

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC,*
  241 N.E.3d 454 (Ill. 2024)...............................................................................12, 13

*U.S. v. Molina Healthcare of Ill.,*
  17 F.4th 732 (7th Cir. 2021) ..................................................................................7

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.,*
  2016 WL 4414960 (N.D. Ind. Aug. 19, 2016).......................................................4

*VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC,*
  100 Cal. App. 5th 287 (2024) ................................................................................4

*Victor Elias Photography, LLC v. Ice Portal, Inc.,*
  43 F.4th 1313 (11th Cir. 2022) ..............................................................................7

*Waldon v. Wal-Mart Stores, Inc.,*
  943 F.3d 818 (7th Cir. 2019) ................................................................................14

*Zablocki v. Merchants Credit Guide Co.,*
  968 F.3d 620 (7th Cir. 2020) ..................................................................................4

v

## **INTRODUCTION**

Plaintiffs' Opposition cannot overcome the fatal deficiencies in their Complaint. Instead, Plaintiffs recharacterize the same deficient allegations, dispute inescapable legal standards, and seek to excuse their deficient pleadings by misquoting a privacy notice to remove explicit consent language. Their attempts to buttress their flawed claims with attorney arguments fail.

Start with the license. Even if Plaintiffs had properly pleaded that Google trained its AI models on Plaintiffs' asserted works, Plaintiffs do not dispute that they chose to distribute and market these works on YouTube under a TOS that grants a broad license for Google to use YouTube content. Plaintiffs' attempt to artificially narrow that license cannot be squared with the TOS's plain terms. And their barebones assertion that Plaintiffs' works appear on non-Google platforms pleads no facts connecting those platforms to Google's training pipeline.

The DMCA claims fare no better. Plaintiffs concede their injury was complete at ingestion, before Lyria existed—confirming the standing defect rather than curing it. Their own allegations concerning how Google processed audio defeat the identicality Section 1202 requires, and recasting the absence of any infringing output as a "question of proof" does not cure the missing allegation. Contributory and vicarious infringement claims fail because the Complaint identifies no infringing output, and the contributory claim is also deficient because it alleges no inducement or tailoring as required by *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026).

The Lanham Act and parallel state-law claims fail for want of the same facts: no output causing confusion, no causal link to any statement, and—as Plaintiffs themselves concede—no life independent of the federal claims on which they ride.

The biometric and publicity claims depend on an intentional misreading of the ProducerAI Notice. That notice says nothing about Lyria and leaves Plaintiffs with only the same conclusory inference this Court rejected in *Martel*. The digital-replica and publicity claims fail independently

1

for lack of any identified replica, public distribution, or escape from Section 30(e)'s safe harbor.

## ARGUMENT

**I.      The Opposition Does Not Rebut Plaintiffs' Broad License to YouTube**

Even if the Complaint's allegations concerning Google's use of Plaintiffs' works to train AI were truthful, which Google disputes, the Opposition fails to rebut that, in uploading their music on YouTube, Plaintiffs agreed to a TOS that unambiguously grants YouTube and its Affiliates, including Google, a broad license to "use that Content." The plain terms of the license are properly considered at the pleading stage, and Plaintiffs' attempts to fabricate ambiguity should be rejected.

*First*, Plaintiffs' claim that Google's license defense cannot be resolved at the pleading stage is belied by their own authority, which confirms dismissal is proper when the complaint itself establishes an affirmative defense. Opp. 4 (citing *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939–40 (7th Cir. 2016)). That standard is met here: the Complaint and the documents it incorporates establish the defense on their face. *See, e.g.*, *Brechbill v. Home Invest LLC*, 2018 WL 4384297, at *13–14 (N.D. Ill. Sept. 14, 2018) (dismissing direct and contributory copyright claims at the pleading stage where an incorporated license authorized the challenged conduct); *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *3–6 (S.D.N.Y. Mar. 21, 2022) (dismissing copyright claims under this same "clear and broad License" at issue here).

*Second*, although Plaintiffs do not dispute that the Complaint incorporates the TOS, they incorrectly argue that the very TOS Plaintiffs repeatedly cite in alleging their claims (*e.g.*, Compl. ¶¶ 22, 64, 70–71, 104, 237) should not be considered because the Complaint "does not allege that any Plaintiff personally uploaded any work" (Opp. 2). But that mischaracterizes the Complaint; the claims are based on the Terms that governed when each Plaintiff "commercially distributed [their music] on major streaming platforms, including … YouTube," which required acceptance of the Terms as a condition of distributing on the platform. Compl. ¶¶ 26–27 (Woulard Plaintiffs);

2

32 (Burjek Plaintiffs); 39 (Directrix Plaintiffs); 47–48 (Fiennes); 51 (Mell) (without express reference to YouTube); 55 (Kogon).[1] The Complaint cannot avoid the incorporation principle through selective silence about who pressed "upload" while simultaneously centering the dispute on the theory that Google's "contractual control" through the TOS does not extend to "developing and commercializing generative music systems trained on the recordings it was entrusted to protect." *Id.* ¶¶ 70–72; *see 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (incorporation-by-reference "prevent[s] … surviving a motion to dismiss by artful pleading").[2]

*Third*, the Complaint's bald assertion that Plaintiffs' broad license grant to YouTube and Google does not cover AI training activities, Opp. 3; Compl. ¶¶ 70–71; *see also id.* ¶ 22, is belied by the unambiguous text of the license itself. The plain text of the TOS extends a license to "use that Content" on YouTube for Google's "business." Tellingly, Plaintiffs cite no law or principle of contract interpretation requiring a broad license grant to enumerate each and every potential use. Even the enumerated illustrative uses in the TOS—*i.e.* "to reproduce, distribute, prepare derivative works, display and perform"—encompass the same conduct the Complaint calls unlawful: Google's alleged reproduction of Plaintiffs' recordings to train its models.[3] Ex. E.

Plaintiffs' self-serving assertions contradicting the unambiguous TOS do not help them: "the facts communicated by that document [incorporated by reference] control over allegations to

---

[1] That some Plaintiffs allegedly distribute their songs "through digital distributor EmuBands," Opp. 4, demonstrates that Plaintiffs authorized an agent to place their works on YouTube. Doing so does not exempt those works from the Terms that govern content on YouTube, including the license to use "that Content."

[2] It does not matter which version each Plaintiff signed. Every version since 2008 contains the license grant and Plaintiffs agreed to be bound by subsequent revisions. *See* Schapiro Decl. Exs. A–E; Compl. ¶ 64 n.28.

[3] The ProducerAI terms' inclusion of "AI and machine-learning technologies" has no bearing on the scope of a different TOS containing an unambiguous, broad grant to "use" "audio" placed on YouTube. Opp. 4.

3

the contrary." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020); *see also Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2016 WL 4414960, at *2 (N.D. Ind. Aug. 19, 2016) ("facts included in documents that are attached to the complaint or incorporated to it by reference may defeat contrary allegations in the complaint"). A plaintiff "may not, through allegations in the complaint, undermine the plain language of the parties' agreement." *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 832–33 (N.D. Cal. 2020) (applying California law) (dismissing based on YouTube's TOS under the incorporation-by-reference doctrine).

Plaintiffs' alternative reading (Opp. 3-4)—seeking to limit the license grant to YouTube's Service—is equally meritless. The TOS grants a license to "use that Content (including to reproduce, distribute, prepare derivative works, display and perform it)," "in connection with the Service and YouTube's (and its successors' and Affiliates') business …." Schapiro Decl. Ex. E. The license grant expressly extends to Google's business. *See* Compl. ¶¶ 56, 64. Plaintiffs' construction—requiring use to relate to "the Service"—renders the "Affiliates' business" clause surplusage, contrary to Cal. Civ. Code Section 1641, requiring reading a contract to give effect to every part. Opp. 3; Schapiro Decl. Ex. E (California law governs); *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 49 (2010) (rejecting reading that "renders … surplusage" an enumerated term, "unnatural," in a contract provision for "the attribution of unnatural or extrahuman abilities"); *VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC*, 100 Cal. App. 5th 287, 298–99 (2024) (avoiding a narrow interpretation that would render part of a contract provision surplusage).

Finally, the Opposition's rejoinder that "a valid YouTube license would not cover the full case" because Plaintiffs also distribute on Spotify, Apple Music, Amazon Music, Tidal, and Pandora (Opp. 5) does not save the claims. No allegations connect those platforms to Google's training pipeline; Plaintiffs allege only distribution there. Compl. ¶¶ 27, 32, 39, 48, 55, 63. Merely

4

alleging that the training corpus was vast does not plausibly allege that Google ingested Plaintiffs' works on non-Google platforms. *See In re Mosaic LLM Litig.*, 2025 WL 2402677, at \*2 (N.D. Cal. Aug. 19, 2025) ("size of the data sets does not plausibly connect the dots to Plaintiffs' works").

## II. Plaintiffs Lack Standing to Bring Their DMCA Claims

Plaintiffs' Opposition does not change that the Complaint identifies only bare statutory violations, divorced from any real-world consequence, which cannot serve as statutory or Article III injury. *See* Mot. 5–6. The Opposition reaffirms Google's argument. Plaintiffs identify their claimed injuries as the "removal of CMI and distribution of works with CMI stripped" (for Section 1202 claims), the "circumvention and extraction of protected copies" (for Section 1201 claims), and argue the DMCA injuries were "complete at ingestion." Opp. 6–7. But Plaintiffs' characterization of harm just restates the statutory standard, conflating the purported injuries and alleged DMCA violations. *See id.* Moreover, the theory that injury occurred at "ingestion" strains credulity—Plaintiffs could not have been harmed long before Lyria was trained, before any model was released, and before any user saw an output. *See id.* That would turn standing on its head.

Plaintiffs' fallback theory—injury through "impaired licensing, tracing, enforcement, and market displacement"—fares no better. Opp. 7. These are not concrete injuries; they are speculation about hypothetical future harm. Plaintiffs have no answer to the cases cited in the Motion, Mot. 5–6, and their attempts to distinguish *Raw Story* and *GitHub* by arguing that they "involved pleadings where CMI removal was disconnected from concrete injury," Opp. 7, only reinforce why dismissal is required: the exact same defect is apparent here.

## III. Plaintiffs Fail to State a Claim for Their DMCA and Copyright Claims

### A. Plaintiffs' Section 1202 Claims Fail (Counts V and VII)

1. Plaintiffs Fail to Allege the Existence of CMI in Their Copyrighted Works

Plaintiffs do not dispute that their Section 1202(b) claim requires showing CMI was a part

5

of the work when the defendant received it. Mot. 7; Opp. 8. Instead, they argue this requirement was met because of Content ID, through which they submitted a form to Google for each work "identifying, at a minimum, the title, artist, and record label." Opp. 8 (quoting Compl. ¶ 68). Plaintiffs' argument confirms, rather than cures, the deficiency. By Plaintiffs' own account, they furnished metadata to Google through a Content ID form; it was not embedded in their recordings when uploaded to YouTube. *See id*. Plaintiffs cannot plausibly allege that Google removed CMI from the "body" or "area around" their recordings when none existed at the time Google received it. *Alan Ross Mach. Corp. v. Machinio Corp.*, 2019 WL 1317664, at *3 (N.D. Ill. Mar. 22, 2019).

### 2. Plaintiffs' Section 1202 Claims Fail the Statute's Identicality Requirement

No DMCA violation exists unless works are identical. Mot. 7–8. Plaintiffs concede they have no 1202(b) claim (Count V) based on outputs, and instead base it on ingestion. Opp. 9. But their own account of ingestion defeats identicality; they allege CMI was removed when Google converted an audio file into "machine-readable formats, segmented it into clips, [and] tokenized it" (Compl. ¶ 8). Tokenized representations lacking CMI are not identical to the original audio.

As for Section 1202(a) (Count VII), Plaintiffs concede that the claim requires an infringing output and do not dispute that none is alleged. Opp. 11 n.5. Instead, they claim the existence of an infringing output "raises a question of proof, not pleading." *Id.* That is absurd. The failure to allege *any* infringing output is not a minor pleading gap to be filled in discovery; it is the failure to plead a violation of Section 1202(a) in the first place. *Alan Ross*, 2019 WL 1317664, at *2–4 (requiring allegation that false CMI was conveyed with the work).

### 3. Plaintiffs Fail to Allege Double Scienter for Their Section 1202 Claims

The Opposition fails to meaningfully engage with Section 1202's double-scienter requirement. To survive a pleading challenge, Plaintiffs must allege that a defendant (a) knowingly

removed, altered, or falsified CMI and (b) knew doing so would induce, enable, facilitate, or conceal infringement. *See* Mot. 8; Opp. 9–10.[4] Even assuming Plaintiffs met the first level (they have not, *see* Mot. 8–9), they fail at the second. The Complaint makes at most two arguments regarding that second level: (1) knowledge may be alleged generally and (2) Lyria's use of a filter shows it is capable of generating infringing works. Neither argument saves the claims.

Plaintiffs mischaracterize *U.S. v. Molina Healthcare of Ill.*, 17 F.4th 732 (7th Cir. 2021), as holding that knowledge may always be alleged in conclusory and unsupported fashion. Not so. State-of-mind allegations must still be supported by sufficient allegations to be plausible. The *Molina Healthcare* complaint cleared the knowledge requirement because—unlike here—there was "ample detail to support a finding that [defendant] had actual knowledge." *Id.* at 745; *see also Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible.").

In stark contrast, Plaintiffs do not allege a single fact sufficient to show that Google knew, with a "degree of likelihood or certainty," that any CMI removal or falsification would "induce, enable, facilitate, or conceal an infringement." *Sun v. Xie*, 2025 WL 2467497, at *5 (N.D. Ill. Aug. 27, 2025) (quoting *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022)). Plaintiffs instead argue that because Google built filters to catch certain outputs similar to training data and acknowledged they are "not foolproof," Google must have known its system produces infringing outputs. Opp. 10. But general awareness that a safeguard "might not be foolproof" is precisely the type of allegation courts have repeatedly held inadequate. Mot. 9–10. That makes sense—Plaintiffs' logic would punish and therefore deter companies from deploying

---

[4] On the Section 1202(a) claim (Count VII), Plaintiffs also fail to address that the first level of scienter cannot exist absent allegations that Lyria generated an infringing output with false CMI.

safeguards the copyright system should encourage. The Court should not adopt a rule that would undermine the purpose of the statute it is supposed to serve. *See, e.g.*, *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999) (courts should avoid rules that "reduce the incentive" to adopt compliance measures and create "perverse incentives" that "undermin[e]" statutory objectives).

### B. Plaintiffs' Section 1201 Circumvention Claim Fails (Count VI)

Plaintiffs abandon their nonsensical theory that Google circumvented protections on its own YouTube service and pivot to argue that their claim rests entirely on information-and-belief allegations that Google circumvented access measures on *other* music streaming platforms. Compl. ¶¶ 192–94. This about-face is flatly contradicted in the Complaint, which alleges that Google "extracted audio from YouTube-hosted recordings . . . from within its own infrastructure." *Id.* ¶ 102. It also defies logic to allege that Google circumvented other platforms' restrictions to copy works to which it had access on its own platform (Compl. ¶ 63).

Plaintiffs' attempt to distinguish *Agfa* and *Couponcabin* is based on the same wrong-headed information-and-belief allegation that Google circumvented *other* platforms' technology to obtain their works. Opp. 11. Whatever gatekeeping other platforms employ is beside the point; Plaintiffs voluntarily furnished their works to Google by uploading them to YouTube. Mot. 10.

The Section 1201(b) trafficking claim fails for additional reasons: Plaintiffs fail to identify any circumvention technology that was trafficked, do not allege any distribution to third parties, and do not address whether any such technology lacks commercially significant non-circumvention uses. *See* Mot. 10–11. Plaintiffs argue that Rule 8 does not require them to allege any of these things before discovery, but the cases Google cites—including those decided on the pleadings—say the opposite. *See id.; see Navistar, Inc. v. New Baltimore Garage, Inc.*, 2012 WL 4338816, at *5 (N.D. Ill. Sept. 20, 2012) (dismissing Section 1201 claims for failure to allege that a particular circumvention technology was used or trafficked). Plaintiffs have no credible response.

**C.      Plaintiffs Fail to State a Claim for Contributory Infringement (Count VIII)**

Plaintiffs concede the Complaint contains no allegations that Google induces users to infringe. Plaintiffs' only argument—that the Complaint alleges "tailoring"—is meritless. Opp. 12. The Supreme Court recently explained that a service "is tailored to infringement" only if it is "not capable of substantial or commercially significant noninfringing uses." *Cox,* 146 S. Ct. at 967. The Complaint does not allege that Lyria is capable only of generating infringing music, or even that it is primarily used for that purpose. (Such allegations would not be plausible in any event.) The absence of any plausible allegations under *Cox* ends the inquiry.

Plaintiffs' confusing (and unpleaded) argument that "the service cannot be put to a noninfringing use without assuming the lawfulness of those training copies," Opp. 12 n.6, conflates alleged direct infringement by Google in the training of Lyria with contributory infringement, which seeks to hold Google *secondarily* liable for the alleged direct infringement by users of Lyria. *See* Compl. ¶ 19 (contributory claim based on "downstream infringement by users of its generative music systems."). And Plaintiffs' argument that because *another* tool (Dream Track) was "built to generate music in the style and voice of named artists," Opp. 13 n.7, Lyria is only capable of infringing use is nonsensical. Lyria is a separate product with different functionality, and Plaintiffs have not pleaded otherwise. Because neither inducement nor tailoring is plausibly alleged, *Cox* is fatal to the contributory infringement claim. *See Eight Mile Style v. Meta Platforms, Inc*. 2026 WL 1735026, *4-6 (E.D. Mich. June 16, 2026) (dismissing contributory claim under *Cox* for failure to allege inducement or tailoring); *Barnes v. Sanchez*, 2026 WL 1912085, *6 (N.D. Cal. July 2, 2026) (similar); *Art Recs. LLC v. Youtube LLC.*, 2026 WL 1669167, *2 (N.D. Cal. June 9, 2026) (similar).

**D.      Plaintiffs Fail to State a Claim for Vicarious Infringement (Count IX)**

Plaintiffs' vicarious infringement claim fails because the Complaint does not plausibly allege direct infringement by any third party. Plaintiffs' verbose argument (Opp. 14–15) that Lyria

9

is not a "passive platform" in an attempt to sidestep persuasive authority is a red herring. Plaintiffs have made no allegations regarding any infringing output—that is dispositive. Plaintiffs' argument that they cannot allege direct infringement because "the output evidence is in Google's logs," Opp. 16, is sophistry: Lyria is accessible to the public, and if Lyria were capable of generating infringing outputs substantially similar to the copyrighted works, Plaintiffs could and would have generated illustrative examples to attempt to establish the plausibility of their claim.

Plaintiffs' assertion that Google benefits financially is based entirely on the unsupported and generic allegation that "[t]he commercial appeal of Google's products increases when outputs are closer substitutes for licensed music." Opp. 15–16. That is too generalized and untethered to Plaintiffs' particular copyrighted works to support a claim. Nowhere does the Complaint plausibly allege that users are drawn to Lyria so that they can infringe *Plaintiffs'* copyrights specifically, or that Google directly benefits from that particular alleged infringement. *See Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) (the "infringing material" itself must be the draw to defendant's service); *Barnes*, 2026 WL 1912085 at *8 (same).

## IV. Plaintiffs' Lanham Act and Related State Law Claims Fail

### A. Plaintiffs Fail to State a Claim for False Endorsement (Count X)

Plaintiffs do not dispute that the Complaint fails to identify any specific Lyria-generated output that purportedly uses Plaintiffs' identities in a manner that could cause consumer confusion. That is grounds for dismissal. *See Marshall v. ESPN Inc.*, 111 F. Supp. 3d 815, 837 (M.D. Tenn. 2015) (false endorsement claim dismissed for failure to plead "specific facts indicating when any of their images were used and, if so, by whom"). Plaintiffs seek to sidestep dismissal by arguing that Lyria's product design gives rise to the purported false endorsement. *See* Opp. 16. Plaintiffs hypothesize that because Google offers Dream Track, a different music generation tool licensed by artists, Lyria users will assume that the artists whose names they choose to type into a *Lyria*

10

prompt have endorsed Lyria. This is pure conjecture, lacking any factual allegations. As in the cases cited in Google's motion, the "mechanism capable of producing confusion," Opp. 16, alleged here is implausible. In any event, because Plaintiffs rely on Lyria users' (and not Google's) use of Plaintiffs' identities, Google is not *itself* using them and cannot be liable for false endorsement under this theory. 15 U.S.C. § 1125(a) (listing "use[] in commerce" as an element of liability); *see Shenzhen Kangmingcheng Tech. Co. v. PDD Holdings Inc.*, 2024 WL 5221272, *3 (N.D. Ill. Dec. 23, 2024) (dismissing Lanham Act claims for failure to allege use of mark in commerce).

The Opposition does nothing to undermine the conclusion that Plaintiffs' identities are not sufficiently recognized by Lyria users to result in consumer confusion. Plaintiffs incorrectly assert they need only allege recognition in the niche market of "sync licensing, production music, commissioned scoring, and related commercial music buyers." Opp. 17. But Lyria is alleged to be a "mass-market free tool" available globally to "750 million users." *See* Compl. ¶¶ 1, 108. Accordingly, recognition must be plausibly alleged among this mass market. It is not. The few allegations about Plaintiffs' music-related activities in the complaint, Opp. 17, do not support a plausible inference that Plaintiffs' names or voices are in fact known to a significant portion of Lyria users. Both *Toth-Gray* and *Stayart*, cited by Plaintiffs, make clear that sufficient recognition among the consumers of the defendant's product is required to sustain a claim. Here, the Complaint does not allege a sufficient level of recognition among Lyria users. Mot. 13–15.

> ### B. Plaintiffs Lack Standing and Fail to State a Claim for False Advertising Under the Lanham Act (Count XI)

Plaintiffs lack standing because they have not plausibly alleged that any purportedly false statement identified in the complaint proximately caused the alleged harm. Mot. 16. Misreading *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), Plaintiffs argue that because Lyria and Plaintiffs are purportedly "direct competitor[s]," any false statements attracting

11

users to Lyria necessarily cause Plaintiffs harm. (Opp. 18–19). This argument fails out of the gate

because the complaint does not plausibly allege that Lyria and Plaintiffs are "direct competitors."

It contains no specific allegations that Lyria users have generated songs substituting for Plaintiffs'

songs or impacting Plaintiffs' commercial interests. But even assuming arguendo that the parties

compete in some way, *Lexmark* requires Plaintiffs to plead specific facts that link a specific false

statement to the harm claimed. *Lexmark*, 572 U.S. at 133–34; *MillerKing, LLC v. DoNotPay, Inc.*,

702 F. Supp. 3d 762, 773–74 (S.D. Ill. 2023) (allegations that parties were direct competitors

insufficient to support theory of harm).[5] The Complaint assumes, without providing any factual

basis, that gain for Lyria results in harm to Plaintiffs. *Lexmark* requires more.

> **C.** **Plaintiffs Fail to Allege Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count XVI) or the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (Count XIV)**

Plaintiffs concede that the UDTPA "track[s]" Section IV.A's false-endorsement theory and

Section IV.B's false-advertising theory, and that the ICFA deceptive theory "overlaps the false-

advertising claim and survives with it." Opp. 20. Because the Lanham Act claims fail, see *supra*

§§ IV.A–B, the state-law claims do too. Plaintiffs' attempts to differentiate these claims falter.

First, Plaintiffs claim that unlike the Lanham Act, the UDTPA "does not require actual

confusion or actual damages," but only a showing that a plaintiff is "likely to be damaged." Opp.

20. That distinction cuts *against* Plaintiffs. The UDTPA provides no private right of action for

damages; a private plaintiff is limited to injunctive relief, *see Tri-Plex Tech. Servs., Ltd. v. Jon-

Don, LLC*, 241 N.E.3d 454, 460 (Ill. 2024), which requires pleading likely "ongoing or future

harm." *Sanchez v. Walmart*, 733 F. Supp. 3d 653, 667 (N.D. Ill. 2024). But that goes to the remedy,

---

[5] *See also Ottaviani v. Rubino*, 2024 WL 3442963, *5 (N.D. Ill. July 17, 2024) (insufficient allegations that alleged deception of consumers caused them to withhold trade from plaintiffs); *AAVN, Inc. v. WestPoint Home, Inc.*, 2019 WL 1168102, *2–3 (N.D. Ill. Mar. 13, 2019) (similar).

not the merits: the UDTPA still demands a plausible likelihood of confusion, and Plaintiffs' confusion theory fails for the same reasons their Lanham Act theory does. *See supra* § IV.A.

Second, Plaintiffs argue that the ICFA claim is distinct because the statute does "not require the Lanham Act's zone-of-interest showing or 'commercial advertising or promotion' element." Opp. 21. But that makes no difference; Google has not argued that Plaintiffs' Lanham Act claim fails the zone-of-interests test, but rather fails the proximate causation requirement. *See supra* § IV.B. In any event, relying on ICFA's standard does not save Plaintiffs' claim because standing under ICFA is even more circumscribed than under the Lanham Act. ICFA claims may be brought *only* by (1) consumers of a product who (2) were themselves deceived, and (3) were harmed from the deception. *See Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002) ("a plaintiff must allege that he was, in some manner, deceived"). Plaintiffs therefore cannot possibly bring an ICFA claim. *See Tri-Plex*, 241 N.E.3d at 465 (Illinois case law is "irreconcilable" with any argument that ICFA claims could be "brought by businesses who are not consumers of defendant's products").[6]

## V.     Plaintiffs' Other State Law Claims Fail

### A.     Plaintiffs Fail to State a Claim for Violation of the Illinois Biometric Information Privacy Act (BIPA) (740 ILCS 14/1) (Count XII)

As a matter of law, Plaintiffs fail to allege Google extracted their "voiceprints"—*i.e.* isolated their unique voice characteristics in a way that could identify each of them. Mot. 19–22. Plaintiffs' response (Opp. 2, 21) hinges on an intentional misreading of the ProducerAI Privacy Notice (the "Notice") that is deceptive for two reasons. First, ProducerAI expressly notifies users

---

[6] Plaintiffs concede that to the extent their ICFA claim is independent of the Lanham Act, it does not rely on any false statement, failing Rule 9(b)'s heightened pleading requirement. Opp. 21 ("That theory does not collapse into any single statement"); *see CardioNet v. LifeWatch Corp.*, 2008 WL 567031, at *3 (N.D. Ill. Feb. 27, 2008). And Plaintiffs' attempt to relabel the ICFA claim as arising from "unfairness" does not change that claims may be brought exclusively by harmed consumers. *See Tri-Plex*, 241 N.E.3d at 465.

who choose to upload their voices that "[w]here we provide you notice and request your consent, the models may extract a biometric voiceprint from your vocal recording." *See* Notice at 9 (Dkt. No. 21-8). Second, ProducerAI is alleged as "a standalone platform" (Compl. ¶ 3), and the Notice informs nothing about Lyria's development or underlying training data. Plaintiffs surgically excise the consent clause from the Notice and ignore its inapplicability to Lyria, transforming a BIPA-compliant notice for ProducerAI users into a specious admission that Google extracted voiceprints from Plaintiffs' recordings during Lyria's training. Opp. 21–24. Plaintiffs' misrepresentations concerning the Notice destroy any basis for their BIPA claims and border on sanctionable. *See, e.g.*, *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 824 (7th Cir. 2019) (sanctions appropriate where counsel submitted photograph with timestamp cropped out).

Plaintiffs incorrectly argue that there is a factual question of whether the Notice applies to Plaintiffs and not just ProducerAI users. Opp. 22. The Notice must be evaluated in full as a matter of law; where its plain terms contradict the complaint, the document controls. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("[I]f an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."). The Notice makes plain that its voiceprint provisions apply exclusively to ProducerAI *users*, and they kick in only where user consent is provided. Notice at 9. Plaintiffs put the Notice at the center of their BIPA count; they cannot selectively crop out words and ignore the portions debunking their theory.

1. Plaintiffs Fail to Allege Google Isolated or Extracted Voiceprints

Stripped of the Notice, Plaintiffs' voiceprint theory reduces to one paragraph of "information and belief" conjecture. Compl. ¶ 249. Google "could not have built" Lyria's vocal capabilities "without extracting, modeling, and storing computational representations" of human voices, which Plaintiffs then self-servingly label "voiceprints within the meaning of BIPA." *Id.*;

14

Mot. 19–21. This Court rejected precisely that inferential leap in *Martell v. X Corp.*, where the plaintiff could not bridge the gap between a technology's output (a per-photo hash) and an actual biometric extraction. 2024 WL 3011353, at *2–4 (N.D. Ill. June 13, 2024) (Harjani, J.). Plaintiffs' attempt to distinguish *Martell*—that here they pleaded "the missing link" because Google released a configurable voice-based AI product—gets them no closer. Opp. 22. As in *Martell*, Plaintiffs do not explain why Lyria's sophisticated capabilities give rise to an inference that voiceprints were essential to its development. Plaintiffs' technical description of the model-development process says the opposite, an argument Plaintiffs ignore. Mot. 19–20.

Plaintiffs' threadbare allegations are especially inadequate in light of extensive documentation Google has shared publicly. The Complaint cites voluminous Google publications detailing its model-development process. *See, e.g.*, Compl. nn.6–12, 38–70. Tellingly, Plaintiffs identify no step detailing alleged voiceprint extraction, nor do they identify any feature of Google's open-source model Magenta RealTime consistent with their voiceprint extraction theory. *See* Mot. 20–22. The Opposition brushes all this aside (Opp. 22–23), but "information and belief" pleading is improper where pertinent facts are public. *Brantley v. Prisma Labs, Inc.*, 2024 WL 3673727, at *5 (N.D. Ill. Aug. 6, 2024) (no information and belief pleading where information is open to public examination). The public documentation here—including Google's published model-development process and Magenta RealTime's parameters—belies Plaintiffs' voiceprint theory.

### 2. Plaintiffs Fail to Allege the Challenged Data Could Identify Them

Plaintiffs' only response to the lack of allegations on the identifiability requirement is to again deceptively present the Notice. Opp. 22–23. Their invocation of the Notice is misleading, improper, and cannot show that Google extracted voiceprints capable of identifying any of them. As explained above, the Notice's voiceprint provisions run only to ProducerAI users who upload their own voices, and only where those users provide consent. Further, the Notice concerns

15

ProducerAI, a "standalone platform" (Compl. ¶ 3), not Lyria. It thus reveals nothing about whether Google extracted an identifiable voiceprint from any Plaintiff's recording. *See supra* § V.A.

> ### 3. Even if Plaintiffs Had Plausibly Alleged Extraction of Voiceprints, Their BIPA Allegations Still Fail to State a Claim

**Section 15(a)**: This claim fails for the threshold reason that defeats every subsection: Plaintiffs do not plausibly allege that Google ever extracted Plaintiffs' identifiable voiceprints, so no duty ever arose to develop or follow a retention-and-destruction policy with respect to them.

**Section 15(b)**: Section 15(b) does not reach the mere possession of biometric identifiers; it requires an "affirmative effort" or "active step" to capture them. *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683–84 (N.D. Ill. 2023) (the section "requires something beyond possession"). Plaintiffs insist that *deGrasse* and *Jones* are "passive-possession cases," whereas "this Complaint alleges extraction." Opp. 23. Not so. Plaintiffs' extraction allegations are conclusory; the Complaint identifies no step in the model-development process at which Google affirmatively isolated an identifiable voiceprint from any Plaintiff's recording. The same defect doomed the claim in *deGrasse*, where the "gist" was only that biometric information was "out there" and could be accessed "if [the defendant] chose to do so." *deGrasse v. Hyundai Motor Am.*, 2025 WL 1413177, at *4 (N.D. Ill. May 15, 2025). Plaintiffs' own account of Google's training pipeline alleges the opposite of affirmative individualized voiceprint extraction. *See* Mot. 19–20.

**Section 15(c)**: Section 15(c) targets "the operation of a market in biometric identifiers"— *i.e.*, the sale, lease, or trade of biometric data. *Thornley v. Clearview AI, Inc*., 984 F.3d 1241, 1247 (7th Cir. 2021). Plaintiffs argue that *Thornley* merely "described the data-broker paradigm" and did not hold that "a paid voice-mimicry product falls outside 'otherwise profit[ing] from'" a biometric identifier. Opp. 24. That misreads both the statute and *Thornley*. As *Davis v. e.l.f. Cosms., Inc*. explains, the catch-all "otherwise profit" in Section 15(c) is interpreted "in light of

16

the terms that precede it: sell, lease, and trade." 2024 WL 2722663, at *8 n.4. Accordingly, the term "otherwise profit" is meant to apply to commercial transactions where "the access to biometric data is shared or given to another." *Id*. Plaintiffs allege no such transaction. Mot. 22.

***Section 15(d)***: Section 15(d) requires factual allegations identifying the recipient, process, and purpose of an alleged disclosure of biometric identifiers to a third party. Mot. 22–23. Plaintiffs again lean on the Notice, arguing it "supplies the basis Google says is missing" because it states Google "may disclose extracted data, including biometric voiceprints, to trusted third-party providers." Opp. 23. That fails for the same reason as the rest of the claim: the Notice concerns the processing of ProducerAI users' uploaded audio, not Plaintiffs' recordings.[7]

***Section 15(e)***: Section 15(e) requires a plaintiff to "at the very least[] allege what the industry standard of care is and how a defendant's practices fell short of that standard." *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *20 (N.D. Ill. Mar. 3, 2025). Plaintiffs contend they pleaded "the statutory benchmark and departure" because BIPA itself "supplies the benchmark" and the Notice "supplies the disclosure facts." Opp. 23–24. But reciting the statutory phrase "reasonable standard of care" is not the same as alleging what the industry standard is and how Google departed from it—precisely the deficiency *Rodriguez* held fatal. *See* Mot. 23.

**B.      Plaintiffs Fail to State an Illinois Right of Publicity Act ("IRPA") Claim**

Having made it impossible to discern from their hodgepodge of a Complaint which allegations support claims under Section 30(a) or 30(b) of IRPA (or both), Plaintiffs now "principally rest" their IRPA claim on Section 30(b), the digital-replica provision. Opp. 24. But Plaintiffs do not successfully address the claim's fatal deficiencies.

---

[7] Plaintiffs note that in *Heard v. Becton, Dickinson & Co.*, the Court originally dismissed the 15(d) claim but then allowed it to proceed after amendment. 524 F. Supp. 3d 831, 843 (N.D. Ill. 2021). But the additional allegations found sufficient—that plaintiffs uploaded their fingerprints directly to the defendant's servers, and then to third-party data centers—are missing here.

***No digital replica identified.*** A "digital replica" must be fixed in a sound recording that "a reasonable person would believe is that particular individual's voice." 765 ILCS 1075/5. But Plaintiffs identify no recording containing any Plaintiff's digital replica. Mot. 26–27. Plaintiffs' stock response that "output logs, prompt logs, similarity checks, reports, and distribution records are in Google's systems" is not enough. Opp. 25. Lyria is publicly accessible; if it were capable of producing a replica of a Plaintiff's voice, Plaintiffs could have generated and pleaded one.

***No distribution to the general public.*** Section 30(b) requires distribution "to the general public." Plaintiffs allege the opposite—that each Lyria output is transmitted only to the single user who submitted the prompt. Compl. ¶ 18. Plaintiffs now point to ProducerAI's sharing, download, and API features, arguing that whether those features make a recording available to the public is "a fact question." Opp. 24–25. But those features describe what a user—not Google—might independently do with an output. In any event, Plaintiffs identify no recording containing a digital replica that was generated by Lyria originally and then shared publicly.

***No Knowledge.*** Plaintiffs cite Section 30(d) of IRPA, which provides for liability against individuals who materially contribute to or facilitate a violation of Section 30(b) after obtaining actual knowledge of a violation. Opp. 25. But Plaintiffs do not allege any instance where Google knowingly shared an unauthorized digital replica after having been made aware of its existence. Nor do Plaintiffs reckon with Section 30(e), which exempts from liability anyone that "solely transmits, stores, or provides access to data or software, including interactive entertainment software, application software providers, or cloud software providers" or that transmits digital replicas "at the direction of a user." 765 ILCS 1075/30(e). Because Plaintiffs' theory of liability hinges on the independent actions of users, Section 30(e)'s safe harbor bars claims against Google.

***No Identifiability.*** Plaintiffs argue that the identifiability requirement—whether "a

18

reasonable person would believe [a voice] is that individual's"—is an "evidentiary issue." Opp. 25. But a factfinder cannot assess whether a recording sounds like a Plaintiff when the Complaint identifies no sound-alike recording in the first place. *See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008–09 (7th Cir. 2019) (no IRPA claim where misuse of identity not alleged).

***Section 30(a) Claim Fails.*** Plaintiffs do not contend with the fact that Section 30(a) reaches only commercial purposes. *See* Mot. 24. Plaintiffs instead invent a theory, arguing that "the voice is not near the product; it is part of what the product sells." Opp. 26. That is a made-up standard, and Plaintiffs do not cite a single case supporting their interpretation. Rather, the Motion cites cases saying precisely the opposite. *See, e.g.*, *Thompson v. Getty Images, Inc*., 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (selling photograph of someone is not actionable under IRPA).

## C. Plaintiffs Concede Unjust Enrichment Is Not an Independent Cause of Action

Plaintiffs do not defend unjust enrichment as a standalone claim. Their request that it be dismissed without prejudice is unsupported. Count XV should be dismissed with prejudice.

## VI. Nearly All State Law Claims Are Preempted (Counts XII-XIII, XIV-XVI)

***BIPA (Count XII).*** Google's broad license encompasses the reproduction and adaptation of Plaintiffs' works for AI training. *Supra* § I. Plaintiffs tie their BIPA theory to the reproduction and alteration of their works during model training—the exact conduct the license permitted. *See* Mot. 29. The BIPA claim is preempted to the extent it would impose a second, biometric-specific consent regime on top of the Section 106 rights Plaintiffs already granted. They try to distinguish the governing authorities on the ground that they involved claims "aimed at the use of fixed performances or copyrighted recordings." Opp. 28. That is this case: the "essence" of the claim is Google's use of their fixed recordings during training, so it is preempted. *See Laws v. Sony Music Ent., Inc*., 448 F.3d 1134, 1144 (9th Cir. 2006).

***IRPA (Count XIII).*** *Toney v. L'Oreal USA, Inc*., 406 F.3d 905, 910 (7th Cir. 2005), does

not state that all IRPA claims arising out of voices embedded in sound recordings survive preemption. Opp. 28. Rather, *Toney* cautions that preemption is inappropriate where the defendant is accused of using the plaintiff's *identity itself* for commercial purposes. 406 F.3d at 910. Here, Plaintiffs challenge Google's right to use their asserted copyrighted works (which happen to contain Plaintiffs' voices). Accordingly, preemption is warranted. *See Dent v. Renaissance Mktg. Corp.*, 2014 WL 5465006, *4 (N.D. Ill. Oct. 28, 2014) ("the crucial point is that they seek to prevent use of their identities *in the song itself*—a particular copyrighted embodiment").

The "digital replica" theory does not save the claim. Whether Lyria generates output that is substantially similar to Plaintiffs' copyrighted works, or Google's model development process violated Plaintiffs' Section 106 rights, would address the same rights 30(b) seeks to protect.

**UDTPA (Count XIV).** Plaintiffs split hairs when they argue that the UDTPA claim is not based on consumer confusion as to *source*, only confusion as to *endorsement*. Either way, the gist of Plaintiffs' theory is that Google is passing off Plaintiffs' content as its own. Plaintiffs' argument that Section 106 of the Copyright Act does not require proof of consumer confusion is immaterial, as courts regularly find UDTPA claims preempted even though they require proof of consumer confusion. *See Fergon Architects LLC v. Oakley Home Builders, Inc.*, 2014 WL 340035, *4 (N.D. Ill. Jan. 30, 2014); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 999 (N.D. Ill. 2011).

**ICFA (Count XVI).** Plaintiffs cannot save this claim from preemption by disclaiming any portion of it that "could be read to rest on copying." Opp. 30. Every allegation of consumer deception relates to Google's alleged copying of the asserted works. Plaintiffs cite no authority that this claim should be treated differently than those in *Personal Keepsakes* and *Defined Space*.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: July 22, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Andrew H. Schapiro*
Andrew H. Schapiro (Ill. Bar No. 6209041)
andrewschapiro@quinnemanuel.com
Joseph H. Margolies (Ill. Bar No. 6341926)
josephmargolies@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
(312) 705-7400 (phone)
(312) 705-4001 (fax)

Viola Trebicka (admitted *pro hac vice*)
violatrebicka@quinnemanuel.com
Moon Hee Lee (admitted *pro hac vice*)
moonheelee@quinnemanuel.com
Eli Pales (admitted *pro hac vice*)
elipales@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000 (phone)
(213) 443-3100 (fax)

William F. Patry (admitted *pro hac vice*)
williampatry@quinnemanuel.com
Jessica A. Rose (admitted *pro hac vice*)
jessicarose@quinnemanuel.com
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000 (phone)
(212) 849-7100 (fax)

*Attorneys for Defendant Google LLC*

21